THE UNITED STATES, APPELLANTS *vs.* JOHN MORRISON AND OTHERS, APPELLEES.

There is no statute in Virginia which expressly makes a judgment a lien upon the lands of the debtor. As in England the lien is the consequence of a right to take out an elegit. During the existence of this, the lien is universally acknowledged. Different opinions seem at different times to have been entertained of the effect of any suspension of this right.

Soon after this case was decided in the circuit court for the district of East Virginia, a case was decided in the court of appeals of the state, in which this question on the execution law of the state of Virginia was elaborately argued, and deliberately decided. That decision is, that the right to take out an elegit is not suspended by suing out a writ of fieri facias, and consequently, that the lien of the judgment continues pending the proceedings on that writ. This court, according to its uniform course, adopts the construction of the act which is made by the highest court of the state.

APPEAL from the circuit court for the district of East Virginia.

In the circuit court, the United States filed a bill the object of which was to make certain real property, assigned on the 22d of October 1823 by John Morrison to Robert G. Ward, subject to a judgment obtained in their favour in the western district of Virginia, in October 1819. The assignment made by Morrison to Ward was general, of all his property, in trust for the payment of his debts to sundry persons. The deed of trust referred to certain previous deeds of trust which Morrison had executed, conveying a large portion of the same property to secure particular debts. The previous deeds were all executed subsequent to the rendition of the judgment in favour of the United States in October 1819; viz. on the 14th of February 1823, the 21st of February 1823, the 9th of March 1823. Divers creditors of Morrison had issued their executions of fieri facias against the property of John Morrison; which had been duly levied upon the same, before the execution of the general assignment of October 1823.

On the day the judgment was obtained by the United States, in 1819, a part of the same was enjoined, and an exe-

cution was issued for the remainder, which was levied on the property of Morrison and Roberts, and a forthcoming bond was given by John Morrison, Roberts and their sureties; and the debt not being paid, an execution was awarded against Morrison, Roberts and one of the sureties, and issued in April 1822. While it was in the hands of the marshal, and before it was levied, the agent of the treasury, at the instance of the defendants, instructed the marshal to forbear levying it, on condition of the defendants' paying the costs; and the costs being paid, the marshal did not make a levy, and made a return within the year 1822, that all further proceedings were suspended, in pursuance of the said instructions. A second fieri facias was issued on the 5th of February 1825, on which the marshal returned " no effects found, not conveyed by deed of trust."

In the bills filed by the United States, they asserted their claim to the payment of their judgment against Morrison in preference to all the other creditors, out of the property assigned to Ward; this claim extending over the property conveyed in the deeds executed prior to the assignment, and also to the proceeds of other real property levied on by executions issued by creditors. The claim was asserted upon two distinct grounds. 1. Upon the sixty-fifth section of the act of congress of 1799, ch. 128, which declares that in all cases of insolvency, or where any estate in the hands of executors, administrators and assignees shall be insufficient to pay all the debts due from the deceased, the debt due to the United States, &c. shall be first satisfied, &c. 2. Upon the ground that their judgment against Morrison gave them a lien upon the land, which, under the facts of the case, they allege was a subsisting one, to overreach the liens created by the deeds executed by Morrison.

The circuit court were of opinion, that the deed of October 1823 was a general assignment, and that the United States were entitled to priority out of the subject contained in that deed ; that nothing was to be considered as effectually conveyed by that deed which had been embraced by the previous deeds, or levied upon by executions previous to that deed ; that the United States had no claim, either by vir-

tue of their statutory priority or judgment, to the property contained in the previous deeds, and levied upon by the previous executions, except to any surpluses which might remain : and proceeded to decree in favour of the United States for the value of all the property in the deed of October 1823, not embraced by the previous deeds and executions, there being no surplus ; and dismissed their bill, so far as it asserted a claim to charge the property conveyed by said prior deeds, or covered by the executions.

From so much of the decree as dismissed their bill to the extent stated, the United States appealed to this court.

For the United States, Mr Berrien, attorney general, contended :

That the judgment of the United States against Morrison was, at the time of executing the several deeds, a good, subsisting and prior lien ; and that they are entitled to have the proceeds of the sales of the real estate of Morrison first applied in satisfaction of the judgment.

The general rule is understood to be, that in settling the priorities of incumbrances, judgments are regarded as such from the time of rendering them ; and that in England, and those states whose laws are similar, with a view to such an object, no inquiry is made to ascertain whether an elegit had issued, or the election to issue it had been entered on the roll within the year and a day.

It is confidently believed that no such case can be found. And it is understood that the circuit court concurred in the principle ; but rested its decision on two grounds. 1. That the elegit would not overreach the title of an incumbrancer or purchaser, unless *at the time* that the conveyance was made to the incumbrancer or purchaser, the judgment creditor could sue out an elegit ; and 2. That after a partial levy of a fieri facias, an elegit could not be sued out until another fieri facias was sued out, and a return of nulla bona had thereon.

This conclusion was deduced from the construction given by the court to the Virginia statute of executions. This is therefore emphatically a case which calls into exercise the

principles so often, and in so many various forms asserted by this court, of a determination to conform its decisions to that of the state courts in their local laws. 1 Wheat. 279. 2 Wheat. 317. 6 Wheat. 316. 10 Wheat. 153, &c. &c.

With this view of the subject, there has been obtained a statement of a case almost contemporaneously decided in the court of appeals of the state of Virginia, after an elaborate argument. It is the case of Fox vs. Rootes et al. not yet reported; but a statement of which having been communicated to the counsel of the appellee, is now submitted.

This case disposes definitively of the first point ruled in the circuit court: for the court of appeals have therein decided, that a judgment creditor is entitled to priority over a subsequent incumbrancer, though his judgment had been rendered many years before, and no execution had ever issued on it, and of course no execution could issue until revived by sciré facias.

It is unnecessary, on this branch of the subject, to make any other remark than that, if in the construction of the laws of Virginia this court conforms its decision to that of the court of appeals of Virginia, the case is decisive of the present controversy; unless the objection suggested by the counsel of the appellees, that it has not been reported, should weigh with the court. Should this be important, the court will retain the cause until an authentic copy of the decision can be obtained.

The case of Coleman vs. Cooke, 6 Randolph, 618, is relied upon, as in itself sufficient to sustain the claim of the United States. The counsel for the appellee supposes it does not overrule the case of Eppes vs. Randolph, 2 Call, 125, to which he has referred; nor conflict with the decision of the circuit court in this case. It is true, that it is said by the court in Coleman vs. Cooke, that the cases of Eppes vs. Randolph and the United States vs. Morrison, do not touch the case of Coleman vs. Cooke on the question of jurisdiction, nor on its merits; but they immediately state it to have been " the uniform course of the English court of chancery, to consider a judgment, with a capacity to acquire the right to sue out an elegit by scire facias or otherwise, as a lien, &c.; and in

the very front of the decision in Eppes *vs.* Randolph, they proceed to decide that the plaintiffs in that case had an existing capacity to sue out elegits upon their decrees; " *without any preliminary proceeding whatever ;*" while in direct conflict with the decision of the circuit court in this case, they affirm that a party having taken out a fieri facias, which had been levied and returned in part satisfied, may sue out an elegit without a second fieri facias, and the return of nulla bona.

The circuit court proceeded on the principle that at the time of the execution of the deeds of trust in February and March 1823, the United States had no existing capacity to sue out an elegit; while the court of appeals have decided that such capacity existed without any preliminary proceeding whatever, and that this capacity subsisted, notwithstanding the partial levy of a fieri facias, and without suing out a second writ and procuring a return of nulla bona.

On the principles settled by the court of appeals in the case of Coleman *vs.* Cooke, the United States had unquestionably a capacity to sue out an elegit at the time of the execution of the deeds of trust, in February and March 1823.

The case of Tyler *vs.* Rice, furnished by the counsel of the appellee, is a decision in an inferior court. The time allowed by law for taking out the elegit had expired; but in the case at bar, the year and day had not expired when the deeds were executed.

The United States cannot be in a worse situation by the issuing and partial levy of the fieri facias, than they would have.heen had no execution whatever issued on that judgment up to the time when the deeds of trust were made : since the court of appeals have decided, that the partial levy of the fieri facias did not impair their right to sue out an elegit, and that it was competent to them to do so without any preliminary step whatever. It follows, that as the year and day had not elapsed when the deeds of trust were executed, the United States had *at that time the capacity to sue out an elegit*, and are consequently entitled to the benefit of their lien arising from their judgment.

In a case depending exclusively on the construction given

[United States *vs*. Morrison et al.]

by the courts of Virginia to a statute of that state, it is not deemed necessary to extend further remarks.

Mr Barbour, for the appellees, relied on the following points. 1. That the three deeds created specific and perfected liens on the property therein conveyed, and that the levy of the several executions created the like liens on the property on which they were levied; which could not be displaced by any statutory priority of the United States, since that priority is not, of itself, equivalent to a lien. Conard *vs*. The Atlantic Insurance Company, 1 Peters, 386.

2. That the judgment of the United States, though it might have created a lien which would have been available if an elegit had been issued within the year, or an election entered on the record within that time, to charge the goods and half the land, yet neither of these having been done, it gave the United States no lien as against purchasers or incumbrancers. Eppes *vs*. Randolph, 2 Call, 125, 85. 1 Peters, 386.

3. Although a fieri facias was issued within the year, yet three years having elapsed after it was issued, within which time the liens of the appellees were created, and before the next execution issued, that could not properly issue without a scire facias, the effect of which would be prospective only:—and the first fieri facias having been suspended by order of the agent of the treasury, the United States lost, by this interference and indulgence, any benefit they might have derived for having issued the execution.

He said it was conceded that if a debtor to the United States made a general assignment of his estate, as in the case before the court, they would be entitled to a preference over all the other creditors; whatever might be the dignity of their debts, unless those creditors have some specific lien upon his property. But when that specific lien existed, he contended the claim of the United States to a priority of payment cannot be sustained.

It must be admitted, that where any bona fide and absolute conveyance is made, the property passes so as to defeat the priority. It has been supposed that the case of Thellus-

son *vs.* Smith, 2 Wheat. 396, had decided that such would not be the effect of an absolute conveyance or prior lien. But this court, in Conard *vs.* The Atlantic Insurance Company, 1 Peters, 386, have said, that the case of Thellusson *vs.* Smith has been greatly misunderstood at the bar; and they affirm the law to be as has been now stated. They say, " if before the right of preference has accrued to the United States the debtor has made a bona fide conveyance of his estate to a third person, or has mortgaged the same to secure a debt; or if his property has been seized under a fieri facias, the property is divested out of the debtor, and cannot be made liable to the United States. The court refer to the United States *vs.* Fisher, 2 Cranch, 358, 1 Condens. Rep. 421; and the United States *vs.* Hoe, 3 Cranch, 73, 1 Condens. Rep. 322 ; for the same principles.

From these authorities it is asserted, that the United States have no right to priority of payment, by force of the statute, over any creditors having specific and perfected liens. If this principle be true, there is at once an end of the question in this case, in the first aspect of it; because some of the appellees have that specific lien by virtue of deeds of trust duly executed, and others by executions actually levied on Morrison's property, before the execution of the assignment in October 1823; and therefore, although the claim of the United States to priority is established by that deed, yet the specific liens have intercepted any thing from passing into the hands of the assignee to be derived from the property subject to these liens, unless there should be a surplus after their discharge.

But : If they can claim no priority by force of the statute, then the inquiry is, can they claim the same by virtue of their judgment merely? It will at once occur to the court that the judgment, as such, under no circumstances could create any lien on the personal property of Morrison, and only on half his lands; so that this aspect of the question has reference only to a supposed lien upon one half of the land.

It is conceded that the judgment created a lien on the land ; which, had it been consummated in proper time, and

in a proper mode, would have been available against the claims of the appellees. The nature of the interest of a judgment creditor in the land of his debtor is very distinctly stated by the court in the case of Conard *vs.* The Atlantic Insurance Company, 1 Peters, 443.

From this authority it fully appears, that, as it respects other persons, the judgment gives no available lien unless it is consummated by a levy on the land, and by following up the steps of the law.

Let us now see what are those steps in Virginia, which are essentially necessary to this consummation? In that state the only execution which can issue against the land is the writ of elegit, by virtue of which one moiety is extended. In 2 Call, 125, and especially in 186, 187, it is distinctly said by the court of appeals what a judgment creditor must do in order to preserve his lien. He must either issue his elegit within the year, or enter on the roll, as in England, or in the record book here, that he elects to charge the goods and half of the land, which would be equal to issuing the elegit.

If he does neither, he may on motion be allowed to enter the election nunc pro tunc; but in the latter case, if there has been an intervening purchaser, the motion will be denied on the principle of relation.

A scire facias may indeed be issued to revive the judgment, but that will operate perspectively, not so as to avoid mesne alienations here. Now let us try the case before the court by the standard here laid down.

The judgment was obtained in April 1822, and not only was no elegit issued within the year, but none has ever been issued; nor has there ever been an entry on the record book of an election to charge the goods and half the land. Here then is an entire absence of both the requisites, the one or the other of which is declared to be a *sine qua non* to the preservation of the lien created by the judgment.

It is true that all the deeds in favour of the other creditors of Morrison were executed, and all the executions were levied within the year after the rendition of the judgment; and if therefore the elegit had been issued, or the election

had been entered within the year, it would have had relation back to the date of the judgment, and have overreached the subsequent liens of the deeds and executions. But neither of these things having been done, we have the authority of the court of appeals for saying that the lien created by this judgment overreached nothing.

The doctrine of this case is supported as well by principle as authority. Let us examine the origin of a lien attributed to a judgment. At common law, a judgment did not bind the lands. The lien is the creature of this court, derived by construction from the statute of Edward, which gives to the creditor the election to take half the lands; the court holding purchasers to constructive notice of the judgment.

But it is a rule of law, that after twelve months and a day the judgment shall be presumed to be satisfied; so that when that time is suffered to elapse, the party is put to his scire facias to remove the presumption, before he can issue his execution. 3 Black. Comm. 41. The purchaser then acting on the presumption produced by the laches of the creditor, it surely is more reasonable that the creditor whose negligence produced a loss should bear it, than the purchaser, to whom it is not imputable.

The common law principle is supported by the Virginia statute, which, in terms, authorises the creditor to issue execution within the year. In confirmation of this reasoning, cited Gilbert on Executions, 12. 2 Call, 142. If in a real action, where the land itself is recovered, and the demandant suffers the year to elapse without execution, the purchaser is protected; the reason is much stronger where money only is recovered, and other executions may issue than those which affect the land.

The reason of the doctrine in the case of Eppes vs. Randolph, requiring either the actual issuing of an elegit within the year, or the entry on the record book of an election to do so, is rendered manifest by seeing the beneficial results which flow from it. The purchaser by these means has fair notice given to him of the intention of the judgment creditor to consummate his lien. This notice is ample to put him

on his guard, and is to every essential purpose equivalent to the notice which is given by the recording of a prior deed. This case, with the reasoning on which it is founded, would seem to be conclusive against the second ground assumed by the United States; the claim to a priority by virtue of their judgment.

But it is supposed that the case of Coleman *vs.* Cooke, 6 Randolph, 618, is in conflict with the case of Eppes *vs.* Randolph. The court in that case decided, that after a fieri facias levied and returned in part, an elegit may be issued without pursuing the fieri facias to a return of nihil; and that a creditor thus situated is competent to maintain a suit in chancery, for the purpose of vacating fraudulent conveyances. They do not, however, decide any thing on the subject of lien, as between a judgment creditor and a bona fide purchaser: on the contrary, they refer to the case of Eppes *vs.* Randolph, and the decision in this case; and distinguish them from that, by saying that these cases proceed upon their respective merits, and not upon the question of jurisdiction; and whether right or wrong, do not touch the case under consideration.

As to the case of Fox *vs.* Rootes et al. in which it is said, the whole of the principles claimed by the appellants have been settled in their favour; it may be observed, that the case is not reported, and that we have no statement of the facts of the case, so as to enable the court to judge of their bearing and application; and the point decided may be differently understood from what it would be and ought to be. The case seems to have been decided before Coleman *vs.* Cooke, and it is therefore obvious that it cannot apply to that case; as if it had, that case would have superseded the necessity of most of the discussion in the case of Coleman *vs.* Cooke. In the case of Fox *vs.* Rootes, the cases of Coleman *vs.* Cooke, and Eppes *vs.* Randolph were referred to, and not overruled, but distinguished from them. Such a decision as is supposed, would be against the justice of the case; against the settled rules in Eppes *vs.* Randolph, and against the opinion of this court in Conard *vs.* The Atlantic Insurance Company, 1 Peters, 443.

[United States *vs.* Morrison et al.]

Great injustice would be done to innocent purchasers by holding their purchases to be overreached by a lien after a year, against their presumption. So, too, it would have the effect of making estates unalienable for twenty years; for no man would be safe in laying out money on land. A scire facias is required by the statute, where no execution has been issued.

If the lien did not, per se, overreach the judgment, then it cannot be sustained that this effect was produced by the execution of that judgment. The fieri facias issued in 1822 was suspended until 1825. Another fieri facias was issued which was returned nulla bona. It has been shown that an execution must, in the first instance, issue within a year and a day, or none can issue without a scire facias. Upon principle then, it would seem to follow that after one execution issued within the year, and more than a year elapsed before a second, in like manner there must be a scire facias; and so it is decided, that even after a renewal by a scire facias, if no execution is issued within a year, there must be another scire facias. Tidd's Practice, 1008. But executions may be continued down regularly by intermediate continuances, and then another might issue after a year. 1 Strange, 100. 2 Wilson, 82. 6 Bac. 107. The next step was to allow the party to enter the continuances at any time, and this, although a legal fiction, was well enough between the parties to the suit; but this fiction of law is always applied to promote justice; and accordingly the court say, in Eppes *vs.* Randolph, that whilst a motion may be made to enter an election of one elegit nunc pro tunc, it will not be allowed so as to affect intermediate purchasers. Cited Tidd, 1003, 4.

Again, the first execution was suspended in its operation before the levy, by order of the treasury; and the greater portion of the liens were created before the second issued. This seems to bring the case within the principle of the cases in 1 Wilson, 44. 2 John, 418. 3 Cowen, 272; that wherever a plaintiff in a first execution grants indulgence to the defendant by a delay of execution or sale, the property becomes liable to a second execution.

Now if an execution actually levied loses its lien by this

[United States *vs*. Morrison et al.]

indulgence, surely one never levied, in consequence of an agreement for indulgence, cannot have the effect of continuing a lien, and that too upon real estate, which in its nature applies only to personal estate.

The decision in the first case proceeds on the ground that the judgment creditor shall not, by indulgence to the defendant, save his property from other creditors; so he ought not to be allowed to grant that indulgence by a delay which deceives purchasers and indeed involves them in loss. He ought not to be allowed to retain a more general lien produced by judgment, when he extends to the defendant an indulgence; which, in case of a specific lien produced by the actual levy of the fieri facias, would be sufficient to divest it, and subject the property to other executions.

Afterwards, on a subsequent day of the term, Mr Barbour stated that he had received a transcript of a decree made by the chancellor of the Richmond district, affirming the principle of Eppes *vs*. Randolph, which was made in March 1828.

He also asked the attention of the court to the dates in Coleman *vs*. Cooke, 6 Randolph, 619; from which he said it appeared that on the 19th of February 1819 the original decree was made, upon which an execution issued, on which a part only of the money decreed being made; the bill was filed February 1820, and of course therefore within the year. The question, as to the effect of the lapse of more than a year, did not therefore arise; and the court say, in p. 630 of the report, that at the time when the bill was filed, the plaintiffs had an existing capacity to sue out elegits upon their decrees, which might well be, consistently with the case of Eppes *vs*. Randolph, the year not having then elapsed.

Mr Chief Justice MARSHALL delivered the opinion of the Court.

The single question in this case is, whether the United States, or certain other creditors of the defendant, John Morrison, have the prior lien on lands of the said Morrison which have been conveyed to those creditors.

In October 1819, the United States obtained a judgment against John Morrison in the district court of Virginia, on

which a fieri facias issued. The goods taken in execution were restored to the debtor according to the law of Virginia, and a bond taken with a condition to have them forthcoming on the day and place of sale. This bond being forfeited, an execution was awarded thereon by the judgment of the district court, on the 2d of April 1822. A fieri facias was issued on the second judgment, the return on which was, that the costs were made, and all further proceedings suspended by order of the agent of the treasury department. The conveyances under which the defendants claim were dated in February and March 1823. The United States contend that the judgment of April 1822 created a lien on these lands which overreaches these conveyances.

There is no statute in Virginia which, in express terms, makes a judgment a lien upon the lands of the debtor. As in England, the lien is the consequence of a right to take out an elegit. During the existence of this right, the lien is universally acknowledged. Different opinions seem at different times to have been entertained of the effect of any suspension of the right.

The statute concerning executions enacts, that " all persons who have recovered or shall hereafter recover any debt, damages or costs in any court of record, may at their election prosecute writs of fieri facias, elegit, and capias ad satisfaciendum within the year, for taking the goods, lands and body of the debtor." The third section provides that when any writ of execution shall issue, and the party at whose suit the same is issued shall afterwards desire to take out another writ of execution at his own proper costs and charges, the clerk may issue the same, if the first be not returned and executed; and where upon a capias ad satisfaciendum, the sheriff shall return that the defendant is not found, the clerk may issue a fieri facias, and he shall return that the party hath no goods, or that only part of the debt is levied, in such case it shall be lawful to issue a capias ad satisfaciendum on the same judgment; and where part of a debt shall be levied upon an elegit, a new elegit shall issue for the residue; and where nihil shall be returned upon any writ of elegit, a capias ad satisfaciendnm or fieri facias may issue, and so vice versa.

[United States *vs.* Morrison et al.]

By the construction put by the circuit court on this section, the party who had sued out a fieri facias could not resort to an elegit, until the remedy on the fieri facias was shown by the return to be exhausted. The United States had sued out a fieri facias on the judgment of April 1822, and the remedy on that writ was not exhausted in February and March 1823, when the deeds of trust under which the defendants' claim were executed. In the opinion of that court, the United States could not, at the date of those deeds, have sued out an elegit. As the lien is the mere consequence of the right to take out an elegit, that court was of opinion that it did not overreach a conveyance made when this right was suspended.

A case was soon afterwards decided in the court of appeals, in which this question on the execution law of the state was elaborately argued and deliberately decided. That decision is; that the right to take out an elegit is not suspended by suing out a writ of fieri facias, and consequently, that the lien of the judgment continues pending the proceedings on that writ. This court, according to its uniform course, adopts that construction of the act which is made by the highest court of the state. The decree therefore is to be reversed and annulled, and the cause remanded to the circuit court, that its decree may be reformed, as is required by this opinion.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the fifth circuit, and district of East Virginia, and was argued by counsel; on consideration whereof, this court is of opinion, that the claim of the United States to the lands conveyed by the deeds of February and March 1823, under the lien created by their judgment of April 1822, ought to have been sustained, and that so much of the decree of the said circuit court as dismisses the original and amended bill of the plaintiffs, so far as it claims to charge the property conveyed by the deed of trust of the 14th of February, in the year 1823, from John Morrison to James A. Lane and William Ward, and by the deed of the 21st of February, in

Vol. IV.—S

the year 1823, from John Morrison to James W. Ford, and by the deed of the 9th of March, in the year 1823, from the said Morrison to Inman Horner, is erroneous, and ought to be reversed. This court doth therefore reverse the said decree, as to so much thereof, and doth remand the cause to the court of the United States for the fifth circuit and district of Virginia, with directions to reform the said decree so far as it is hereby declared to be erroneous, and to affirm the lien of the United States on the lands in the said deed mentioned. All which is ordered and decreed accordingly.