Stanard, J.
The case of Eppes v. Randolph, 2 Call 103, is urged by the appellant’s counsel as a decisive authority against the title of the appellee to a lien, by virtue of his judgment, on the land of which the debtor was seized at the time of its rendition, and which has since passed into the hands of a purchaser for valuable consideration. The proposition he maintains, is, that unless the judgment creditor, within a year and a day after its rendition, shall sue out an elegit, or enter on the roll his election of the elegit, as the execution by which to enforce the judgment, the lien of the judgment is lost as to such of the lands of the debtor as shall have passed to a purchaser for valuable consideration : and this he insists was adjudged in the case of Eppes v. Randolph.
As that case has been very often the subject of discussion in this Court, and very often the remarks of the Judge delivering the opinion in that case, and not bear *56 ing on the actual case, and as I think, not accurate in point of law, have been taken as the point adjudged in the case, I deem it proper to devote a short time to its examination, for the purpose of separating what was ad-fr°m the dicta not necessary to the adjudication; and of shewing in what respect the adjudication is questionable, and the dicta are inaccurate.
That case is thus stated by the Judge who delivered the opinion of the Court: “ The creditor here has taken no steps; he has sued out no execution; has made no election upon record. The judgments have long since expired, and no scire facias taken out to revive them. If he had done so, the lien would have been revived; but to operate prospectively, and not to have a retrospective effect, so as to avoid mesne alienations.”
The judgments had, in truth, been rendered more than twenty years before the suit; no execution had ever issued; the debtor was dead when suit was commenced ; and that debtor had in his lifetime, some ten years before the suit, conveyed the lands sought to be charged, to purchasers for valuable consideration, without actual notice of the judgments. This summary shews that in the view of the Court, the stress of the defence in the case, was upon the fact, that by reason of the creditor’s failing to take out execution within a year and a day, the judgment had expired, and a scire facias was necessary.
The argument for the purchasers in that case, placed their title to protection on the fact that the judgment had expired. In that argument no pretension was advanced, that though execution could issue after the year and a day, by reason of the emanation of a fi. fa. or ca. sa. within the year and a day, the lien of the judgment would have been lost if the creditor did not sue out an elegit, or enter on the record his election of the writ of elegit: and if such a pretension had been advanced, its refutation was at once complete, by an appeal to the *57 plainest principles of law. The lien of the judgment results from the mandate of the execution which issues upon it, which in terms directs the delivery to the creditor of one moiety of the lands, &C. of which the debtor was seized at the date of the judgment or since, at a reasonable value or extent. This mandate is unconditional.
By its express terms, the creditor is entitled to the moiety, at a reasonable extent, without qualification as to the rights of purchasers, or others, intervening between judgment and execution, or to the time at which the execution may have issued.
Notwithstanding that the dictum in that case, that it is necessary to the preservation of the lien of the judgment against subsequent purchasers from the debtor, that the creditor should either sue out, or enter of record his election of the writ of elegit, has been occasionally referred to as an adjudication, it has, as far as my researches have informed me, never been acted on by this Court, or governed the practice of the country. On the contrary, very recently after the decision of that case, the Court in the case of Tinsley v. Anderson, 3 Call 285, sustained the Hen of the judgment from its date, where execution had issued within the year and a day, irrespective of the nature of the execution, and without enquiry whether the creditor had entered on the record his election of the elegit. So in the case of Stuart v. Hamilton, 8 Leigh 503, though there was no elegit or election of one at any time, and the suit in equity was commenced about nine years after the judgment was rendered. So in the case of United States v. Morrison, 4 Peters 124, though there was no elegit or election of one, and though there had been a voluntary suspension of execution for years, the lien of the judgment was sustained against parties claiming under a conveyance for valuable consideration made during the period of the suspension. I do not refer to the cases of Coleman v. Cocke, 6 Rand. 618, and M'Cullough v. Somerville, 8 *58 Leigh 415, because in them, the relief was granted against volunteers or fraudulent grantees, and on that ground distinguishable from, and not ruling the case where the relief is sought against a purchaser for valuable consideration. But it is useless to refer to particular r cases. The efficacy of the judgment, on which the right to issue execution, has not been suffered to expire, has never been questioned even, in any case that has fallen under my notice except the dictum before cited in Eppes v. Randolph.* Tracing that dictum to its source, we shall ascertain its inaccuracy; and when ascertained, the dictum will furnish a curious example of the application of the function ascribed to the suing out, or election on the record of the elegit, in the case to which it is applied, in such manner as wholly to change that function.
The passage from 2 Bac. 730, Gwillim’s edition, in which this election on the roll of the writ of elegit is mentioned, is found under the head in which the author is treating of the time execution may be sued out, and of the necessity of a scire facias. Now the general rule is, that unless an execution be sued out within the year and a day after judgment, the party is put to his scire facias; and having stated this general rule, the author proceeds to state the qualifications; and among them is the one in which, though execution be not issued, if the plaintiff enters on the roll of the judgment an award of an elegit of the same term with the judgment, and continues it down with vicecomes non misil breve, he may take out that writ at any time afterwards, without suing *59 out a scire facias. Bacon refers to the case of Seymour v. Granvill, Carth. 284; 2 Roll. Rep. 105. The inspection of the case in Cari hew shews, that the solo question was, whether the election of the elegit on the roll, and the continuances, entitled the plaintiff to sue out execution after the year, without scire facias ? In other words, whether such election and continuances were equivalent to the actual issue of the execution? The Court at first decided, that unless the execution was actually issued within the year, the plaintiff was put to his scire facias; but having upon the examination of several ancient practising clerks, ascertained that this had been the constant practice for many years, the Court reversed the opinion, and ordered the execution to stand good. The function, then, of the entry of the election of the elegit on the roll, was not to preserve the lien of the judgment, which, but for such election within the year, would be lost, but to preserve the right to issue execution after the lapse of the year and day, though no execution had within that time actually issued. And the entry of such election on the roll was in no otherwise connected with the preservation of the lien, than as the preservation of the right to sue execution without a resort to a scire facias was necessary to the preservation of the lien. Whatever saved the right to execution without scire facias, saved the lien which results from its mandate. If the actual emanation of any other execution within the year incontestibly preserved the right to the elegit after the year, that elegit must be armed with as much power as one, the right to issue which is saved by the mere election of it on the roll. The whole function of the election of the elegit within the year, is to save the right to issue it after the year; and the issue of a fi. fa. or ca. sa. within the year performed the same function. In the case of Eppes v. Randolph, the Court having no warrant but the case ascribing this function only to the election on the roll, ascribes to the elec *60 tion the function of preserving the lien of the judgment; and then leaps to the conclusion, that if such election be not made within the year, the lien is lost as to purchasers for value from the debtor. It is proper to Prem]se> that however inaccurate in the general form in which the proposition is stated by the Court, yet coupled with a point arising in that case, and decided by the Court, the dictum is, as applicable to the case, correct, if the decision of the point alluded to was so. The actual case was one in which the judgment had, in the language of the Court, expired, by failure to sue out execution within the year and day; and the debtor had died, and the creditor must at law have resorted to a scire facias to obtain an execution on the judgment. Now the Court, it seems, entertained the opinion, and decided, that the expiration of the judgment extinguished the lien; and that the lien of the judgment on a scire facias was prospective, and would .operate only from the date of the judgment awarding the execution sought by the scire facias. If this was correct, then the preservation of the right to sue execution on the original judgment, was necessary to the preservation of the lien of that judgment from its date : and the dictum as expressed, involved no substantial inaccuracy. At most it is but elliptical, leaving out one term of the argument. Coupling the point decided, as to the loss of the lien by the expiration of the judgment, with the dictum, the Court would have said: the lien of the judgment is lost if the plaintiff has suffered his judgment to expire, and must resort to a scire facias to have execution. The right to the execution without resort to a scire facias could be preserved only by suing out or entering on the record the election of the elegit, and having the continuances entered; but this has not been done, and execution cannot issue without a scire facias ; and therefore the judgment lien is, as to purchasers for value, lost.. This would all be correct, if the first pro *61 position, in respect to the effect of the expiration of the judgment, he correct. The dictum so explained, and the decision, are limited to the case of an expired judgment; and therefore have no bearing on the question as to the lien of a living judgment.
But is the proposition, that the lien of a judgment on which execution has not issued for a year and a day is lost as to purchasers for value intervening between the date of its rendition and revival, correct ? Though it be not necessary to the decision of the case under judgment to decide it, yet as the case of Eppes v. Randolph has been the subject of frequent reference and discussion, and much diversity of opinion has been expressed in respect to it, I think it will not be inappropriate to couple with the examination of the dictum so frequently in argument vouched for the doctrine, that the issue or the entry on the record within the year and day of the election of the elegit is necessary to preserve the lien, an investigation of this.
I perceive that the Court in the case of Eppes v. Randolph, seems to have been prepared to deny the assistance of the Court of Equity to the creditor, on the circumstances of the case ; and might perhaps have justly done so, and left the party to his remedy at law, if any, and to struggle with all the difficulties that surrounded that remedy. The judgment had been rendered in 1770, with a stay of execution until 1772; and the claim in equity was first asserted in 1797. The circumstances forbidding the assistance of the Court of Equity against purchasers for value in the year 1780 and 1786, are thus adverted to by the Court. “ From July 1772 to April 1774, there is no excuse. This is 21 months, during which the judgment expired, and the lien was at an end: if it could be revived, it was to be done by scire facias on the judgment, which has never been issued.
“Admitting his excuses to be good from April 1774 to 1791, they ceased to operate from the latter period. *62 At that time, if he had sued out his scire facias, there were lands in the hands of the devisees which he might have charged, in exoneration of the purchaser. By lying by until 1797, he suffered them to be exhausted by other creditors by bond, (for the proceedings against them are all subsequent to 1791,) and now comes into equity to set up his lien against purchasers. This appears to me to be contrary to every principle of law and equity.” As the considerations arising out of these circumstances enter into, and are constituent elements of the decision, and were obviously in the view of the Court sufficient to forbid the aid of a Court of Equity, without a careful investigation of the strict law of the case, the strength of the case, as an authority bearing on the legal question, is much impaired.
Again, while we cannot collect from the opinion of the Court what was its view of the nature and source of the lien of the judgment creditor, the counsel of the purchasers, in whose favour the decree was rendered, states it thus: “ The reason that the judgment binds land at all, is not that the statute says they are bound, in so many words, but it is merely a consequence which the Court draws from the statute, by holding purchasers to a constructive notice of the judgment. So that the lien is not created by the statute, but by the knowledge which the Court presumes the purchaser to have had of the judgment.” 2 Call 140. The only reference he makes in respect to the operation of a judgment revived by scire facias, is Gilbert on Ex’ons 12. That relates to a judgment in a real action, and the common scire facias to revive it, and the common law doctrine as to the operation of such a scire facias in such a case; and has no relation whatever to the nature of the execution which issues on an award of execution in a personal action, and the effect of an elegit issued under such an award of execution.
*63 The definition given by the counsel, of the nature and source of the judgment lien, is inaccurate and erroneons in all its parts.
Notice, actual or constructive, is in no respect an element in the constitution of the legal lien of the judgment creditor, on the legal estate of the debtor. That lien, where it exists, deriving its existence from the mandate of the elegit to deliver a moiety of the lands, &c. of which the debtor was seized at the date of the judgment, at a reasonable extent, overreaches all intermediate conveyances, “ without regard to the point of notice or not notice. A judgment creditor whose lien is against the legal estate, may pursue his remedy notwithstanding a sale, though the sale be bona fide, and without notice; and he cannot be deprived of his remedy, or have his priority disturbed.” 3 Pres, on Abs. 327. That lien does not arise from the presumption of the Court, that the purchaser has notice of the judgment; but results from the express grant of the law, imported by the terms of the execution which the law authorizes him to use. In such case the enquiry into notice or no notice, actual or constructive, is supererogatory. The question of notice, (and that is always one in respect to actual notice,) only arises when equitable interests of the debtor are pursued by the creditor, against a purchaser for value, having the legal estate, or a right to call for it; or where the neglect of the creditor to have his judgment registered, or docketed, has impaired the legal force of the lien. 3 Preston on Abs. 328. Davis v. Strathmore, 16 Ves. 419. The reference to Gilbert on Ex’ons 12, was I apprehend, not apposite. The effect of the common law scire facias in a real action, is not the measure of the force and effect of the statutory lien of the elegit. To the solution of the question touching the force and effect of the lien resulting from an elegit issued on the award of execution on a judgment, made on the *64 judicial writ of scire facias, the enquiry most apposite, is, into the nature of that writ, the remedy it seeks, and the judgment pronounced on it. The lapse of the year and day without suing out execution, precludes the emanation of one thereafter, unless it be awarded ... ’. on the judicial writ of scire facias qnare executionem non. The lapse of time imposed a temporary impediment, to the emanation of the execution j and the function of the sdre facias is to remove that impediment by obtaining an award of one. It seeks, not a new judgment, on which execution is to issue, but an award of execution on the judgment already rendered. The execution issues on that judgment; and the award of it on the sdre facias is but the authority to issue it. The judgment awarding it, after reciting the scire facias, which recites the original judgment, is, “ that A. B. (the creditor) have his execution against C. D. (the debtor) of the debt aforesaid, according to the force, form and effect of the said recovery.” Tidd’s Append. 338. The execution which issues is on the original judgment. It is to be according to the force, form and effect of the recovery, that is the original judgment. Pursuing this line of enquiry, it is obvious that if the elegit which issued on the judgment under the award of execution, sought and obtained by scire facias, had an effect different from the elegit which issued without such award, so as to bring down the lien from the date of the judgment to the date of the award of execution, its form would be modified so as to make it operate on the lands only of which the debtor was seized at the award of execution on the scire facias. But I have not found, and I am sure there cannot be found the trace of such a modification, or the suggestion of the necessity of one, or a surmise that there is any occasion for one, or that there is any difference as to the lands on which the elegit operates, in the whole body of the English law, comprised in books of entry, forms of process, elemen *65 tary treatises, and reports. Now, if the law be, that the effect of the elegit issued on the authority of the award of execution on the proceeding by scire facias, was different from that issued, or that could be issued without such authority, as to purchasers for value, how can the failure to enunciate any such proposition, on any one of the manifold occasions which must have existed for its enunciation and application, be accounted for. That such is not the law, plenary proof is found, not only in the silence of the books in respect to it, but in its incompatibility with well established principles.
The forms and substance of pleading, are the most reliable evidences of the law. Books of entries of established reputation, purport to enunciate the remedies, and the defences, that may be made. The judgment creditor, by virtue of his lien, has on the death of his debtor, a remedy against the lands of which the debtor was seized at the date of the judgment or since, by scire facias against the terretenants. Now, these terretenants, are generally purchasers for value, of the lands the creditor seeks to subject to his lien ; and if the failure of the creditor to sue out execution on the judgment within the year and day, before the death of the debtor, so that were the debtor living, the creditor would be put to his scire facias, protected the lands in the hands of a purchaser, from the lien, that matter might be pleaded by the purchaser sued as terretenant, in bar of the scire facias. I find no trace of such a plea in the books of entries, or intimation any where that it would avail. In the enumeration in 6 Com. Big. 3, § 14, p. 523, of the pleas that the terretenant may make, such a plea is not comprised. The plea of purchaser for value before the judgment is enumerated, but not one of purchaser after the judgment.
Again, Preston in his essay on abstracts of title, after stating that when a judgment is duly docketed it is *66 binding at that time on all lands of the owner, and on all he afterwards acquires by purchase or descent, has occasion to notice the cases in which purchasers without notice have protection from the judgment lien: and ^ese arei 1st- When such purchaser gets in a prior legal estate, (that is, a legal estate outstanding, and not held by the debtor;) 2d. When the judgment according to the requirements of the statutes, has not been duly docketed or registered. If the failure of the creditor to sue out execution within the year and day, would have displaced the lien, in favour of such purchasers, he doubtless would have embraced that in his enumeration ; and his not doing so, or alluding to it, is most pregnant evidence, that in his view such was not the law, nor was it even pretended to be law.*
The opinion has been advanced from a most respectable source, that the lien of the judgment creditor did not operate against a purchaser for value without notice, if the creditor had not the right at the time of the purchase, to sue out his elegit, though that right may have existed before, and though he has capacity to restore it afterwards. Such was the opinion of Chief Justice Mar~ shall, in the Circuit Court, in the case of The United States v. Morrison, 4 Peters’ R. 124; and such possibly may have been the impression of the Court in the case of Eppes v. Randolph. There, the creditor having had a right to sue out execution, had, in the opinion of the Chief Justice, that right temporarily interrupted and suspended ; and during this supposed suspension, the rights of the purchaser attached, which he thought overreached the lien of the judgment. But this opinion is untenable. So the Supreme Court adjudged, and so the Court of Ap *67 peals thought in the case of Coleman v. Cocke, 6 Rand. 618; though the ultimate decision of that case did not turn on that point. All that has been said in respect to the source and nature of the lien, and force and effect of the elegit issued under an award of execution on a scire facias, apply a fortiori to a temporary suspension, while the parties are living; and after the suspension the execution issues on the judgment, without the aid of the award of it by the Court. The remedy by scire facias is necessarily resorted to in cases other than the failure to sue out execution within the year and day.
The creditor may die within a few days after judgment. The right to take out execution is suspended until the judgment be revived by the executor or administrator ; and if this opinion be sound, the debtor would be invested, by the death of his creditor, with power to displace the lien of the judgment, by a sale before the revival of the judgment. So the debtor may die a short time after the judgment, with the admitted lien in full force against all his lands, and the debtor may have sold for value some of the lands liable to the lien, while other of his lands descend to the heir. The right to sue out an elegit on the judgment, is thus suspended, until that right shall be restored by scire facias against the heir and terretenants; and before it is so restored the heir may sell the descended land for full value. This opinion would protect the purchaser from the heir, as having purchased when the right to sue out the elegit was suspended, and leave the purchaser from the father exposed to the lien. This could not be tolerated, and shews that the opinion conducting to such a consequence, cannot be correct.
The investigation which I have made, has satisfied me that the decision in the case of Eppes v. Randolph, that the lien of a revived judgment operated in respect to purchasers, only from the award of the execution on the scire facias, was unwarranted by the law as ascer *68 tained by the whole course of opinion, decision and practice previous thereto. No one more readily acknowledges the duty of obedience to the injunction stare decisis, or more promptly acts upon that duty, than I do. However erroneous I deem the decision, if it has been followed by a series of adjudications, or for a length of time, in frequent instances, been accepted and practically applied, as fixing a sound exposition of the law, especially when operating as a rule of property, I deem the duty to abide by it imperative, until changed by the legislature. But the decision aforesaid, during the whole course of my professional and judicial experience, has been the subject of criticism, both by the bar and the bench. Frequently referred to in argument of the bar and the bench, it is a little remarkable, that except the case of Tinsley v. Anderson, 3 Call 285, which occurred shortly after, and from the decision in which, it may be inferred, it had a partial operation, it has not, as far as my recollection of the many cases that have passed through this Court enables me to speak, been practically applied to a single case. Indeed, I recollect but a single one, (that of Fox v. Rootes,) which furnished the occasion for its practical operation; and in that it was by the judgment of the Court, denied all effect. It is true, in that case, the judgment of the Court denying effect there, to the decision in the case of Eppes v. Randolph, puts that denial, not on the ground of error in that decision, but on the ground of notice to the creditors claiming under the deed of trust; and, therefore, that case does not necessarily impeach Eppes v. Randolph. Furthermore, the late act of March 1843, respecting the docketing of judgments, clearly evinces that in the opinion of the Legislature, the lien of the judgment creditor operated from the date of the judgment, and continued thenceforward without qualification or impediment, while the creditor had or could get the capacity to issue the elegit on it, irrespective of intervening abate- *69 merits, suspensions, or delays; and that the judgments docketed according to that act, would in like manner, preserve the past, and continue the existing lien indefinitely: that is, until from some supervening cause, it should be lost, by the loss of the rightful capacity to sue, or to acquire the authority to sue execution on the judgment. These views satisfy me, that the decision has not been accepted in practice and acknowledged in. the frequent application of it as settling definitively a rule of law or property; and that the injunction stare decisis is not of peremptory obligation, in respect to the decision in question. I therefore feel at liberty to act on my clear convictions of the law, as it was when Eppes v. Randolph was decided; and if the case in judgment required it, I should be governed by those convictions, notwithstanding the case of Eppes v. Randolph.
The objection to the right of the judgment creditor to relief in equity, until he shall have sued out his elegit at law, in support of which the case of Neale v. The Duke of Marlborough, 14 Cond. Eng. Ch. 11. 408, is cited, though supported by that case, ought not, in my judgment, to be sustained by this Court. It ought not to be sustained, because it runs counter to the whole course of the practice of our Courts of Equity. Among the numerous cases, which for a series of years have passed through this Court, and in which relief has been given to the judgment creditor, by giving effect to his judgment lien, I do not recollect one, in which the elegit had been actually sued out, and that stated as a part of the title to the aid of equity. In one case, Beverley v. Brooke, 2 Leigh 425, it appears that the judgment creditor had entered on the record within the year and day, his election to charge the lands; but it does not appear that an elegit had issued; and in another case it did appear that an elegit had issued. But the elegit was in that case not used to aid the title to relief of the judgment creditor, but was an obstruction to it. It had been *70 executed irregularly, it was alleged, and had been unproductive, and thereafter quashed; and the issue of it was used by the defendant to repel, not by the plaintiff to aid, the title to relief.
^ ^as ^een course °f practice in this State, to entertain the suit of the judgment creditor .for relief in equity, when the debtor had subsequent to the judgment, conveyed the land in trust for payment of debts, or on other trusts authorizing the sale of the land. The debtor having by his deed subjected it to sale, as a general rule, the parties interested in the proceeds of sale, are benefitted by a sale of an unincumbered title, as well as the judgment creditor. The Courts of Equity have, therefore, entertained the suit of the creditor, as of common benefit to creditor and cestui que trust claiming under the conveyance. That such is the practice, is evinced by the cases of United States v. Morrison ; Fox v. Rootes; M’Clung v. Beirne. Thinking it a salutary one, my opinion is, that it was properly followed in this case, and justified the resort of the appellee to the Court of Equity, and that Court had jurisdiction to give him the relief to which he might shew himself entitled.
My opinion is, that the Circuit Court was right in regarding the damages found by the jury, as an abatement from the price of the land, as of the date of the verdict, and not, as contended by the appellant, as an abatement of that amount of the principal of the purchase money, as of the date of the contract, or of the time at which the bonds for the purchase money was payable.
The appellant cannot, in my opinion, justly complain of the manner in which the Court has apportioned the amount of the abatement for the damages found by the jury, and thus deduced the credit therefor, against the appellee’s judgment.
If, as the appellant contends, it appear, that two of the four bonds were paid, (which, however, I think is at least problematical) it does not appear when, or how, *71 or to whom, they were paid. If made to Glass after notice of the assignment to Basye, or if made to the assignee of Glass, by assignment subsequent to the assignment to Basye, and notice thereof, then I think it clear, that the vendee ought to have insisted ou his en- ’ ° . tire credit for the abatement against those bonds; and his payment of them, could in no manner entitle him to claim any part of the abatement as a credit against the judgment of Spindle, the assignee of Basye. The like consequence would attach in the predicament that the two bonds are not paid, unless it were shewn they were in the hands of prior assignees for value, having a right to charge the land. But suppose they were paid before the assignment to Basye, under whom Spindle claims, so as to leave but the two bonds, the one assigned to Basye, and by him to Spindle, and the other to Rixey, unpaid. If the assignment to Basye was prior to that to Rixey, then the title to credit for the abatement would act ñrst on the bond assigned to Rixey; and the bond assigned to Basye would be subject to credit for only the surplus, if any, of the amount of the abatement beyond the principal and interest of the bond assigned to Rixey; and there would be no such surplus. Even if the assignments were cotemporary, or if the bonds were still owned by Glass, and in the predicament they are here, that is, on one a judgment operating a lien on the land, and on the other no such judgment, the abatement would be applied as between Glass or his assignees, and the parties claiming under the vendee, as a credit against the bond from which no judgment lien had resulted; leaving the judgment which was a lien intact from that credit, which could be met by that which was not a lien. Justice to the vendor and assignor of the bonds for the purchase money, demands such application of such a credit. In almost every imaginable predicament, the manner in which the Court below apportioned and applied the credit, gave the appel *72 lants no just cause of complaint, and in most of the conjectured predicaments, the appellants got by such apportionment more than they were entitled to. Under these circumstances, I think the decree on their appeal, not t0 disturbed.

 Jiote by the Judge. In addition to these cases, I think I can with confidence refer to the experience of the profession, that in the practice of die Courts of this State, the lien of the judgment has not been deemed dependent on the election on the record within the year of the elegit. And finally, the act of March 1843, requiring the docketting of judgments, obviously evinces the conviction of the legislature that such lien by the then existing law, exists irrespective of such election; and I may add, of the lapse of time within which execution may issue, or be obtained on it.

 Note iy the Judge. Adverting to Lomax's Digest of the law respecting real property, since this opinion was prepared, I find a note (1st vol. 289) of the estimable and enlightened editor of that valuable work, in which opinions having a close affinity with the foregoing, are indicated. This concurrence much strengthens my confidence in the correctness of those opinions.