[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11921
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-22917-MGC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS M. DE CESPEDES, et al.,

Defendants,

MARTHA L. LAZARO,
formerly known as
Martha L. De Cespedes,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 25, 2015)

Before WILSON, WILLIAM PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Martha Lazaro appeals the summary judgment in favor of the United States to enforce its liens for a judgment of restitution and for federal income taxes against the surplus proceeds from the sale of real property that Lazaro had owned jointly with her former husband, Carlos M. De Cespedes. The parties disputed the priority of competing liens for the judgment of restitution that the United States had obtained in a criminal action against De Cespedes and for federal tax liabilities assessed against De Cespedes and Lazaro for the underpayment of federal income taxes. The district court ruled that federal law gave priority to the restitution lien. Lazaro argues that the federal tax liens had priority over the restitution lien and that her attorney is entitled to additional attorney's fees. We affirm.

## I. BACKGROUND

In 2001, Lazaro and her husband, De Cespedes, purchased a home at 3821 Bayside Court, Miami, Florida, that became encumbered by liens attributable to their misdeeds. On January 7, 2009, the United States obtained a judgment of more than $6 million against De Cespedes after he pleaded guilty to conspiring to commit wire fraud, *see* 18 U.S.C. § 3664, and on January 15, 2009, the United States recorded a lien against the Miami property for the full amount of the

2

restitution. The restitution payments benefited Kendall Healthcare Group, Ltd., a victim of De Cespedes's fraud.

De Cespedes and Lazaro filed fraudulent federal joint tax returns for tax years 2001, 2002, and 2003. On March 13, 2009, De Cespedes and Lazaro signed an agreement in which they admitted to failing to report more than $4 million in taxable income on their joint returns and consented to the assessment and collection of income taxes, penalties, and interest by the Internal Revenue Service. In June 2009, the Service assessed $4,082,262 against the couple. On March 24, 2010, the Service recorded a federal tax lien that named De Cespedes as the responsible taxpayer, but in May and June 2010, the Service recorded amended notices that named De Cespedes and Lazaro as the responsible taxpayers.

In the meantime, Lazaro and De Cespedes commenced divorce proceedings. Lazaro acquired sole title to the Miami property. On December 15, 2010, a Florida court identified the property as being held jointly "as tenants by the entirety" and transferred De Cespedes's interest to Lazaro as a "lump sum [payment] of alimony for support."

On August 12, 2011, the United States filed a complaint against Lazaro, De Cespedes, and their creditors that sought to levy the Miami property to satisfy the restitution lien and federal tax lien. After the district court entered a default judgment against De Cespedes, Lazaro and the United States agreed to sell the

3

property to satisfy all mortgage and state tax liabilities and to deposit the remaining proceeds in an escrow account for further allocation. Later, the parties agreed to pay half of the remaining proceeds to the Service to reduce the federal tax lien. The district court placed the surplus proceeds "in [its] registry . . . pending [a] determination of how [the proceeds] should be distributed." Lazaro argued that the district court should allocate the surplus proceedings to reduce the federal tax lien because it had priority over the restitution lien.

After the United States moved for summary judgment, the district court allocated the surplus proceeds first to the restitution lien and then to the federal tax lien. The district court determined that the restitution lien had first priority and allocated half of the surplus proceeds to reduce the restitution lien, which it reasoned was enforceable only against the value of De Cespedes's equity interest in half of the property. The district court allocated the remaining half of the surplus proceeds to reduce the federal tax lien.

## II. STANDARD OF REVIEW

We review *de novo* the summary judgment in favor of the United States. *See Litton Indus. Automation Sys., Inc. v. Nationwide Power Corp.*, 106 F.3d 366, 368 (11th Cir. 1997). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmovant, presents no genuine issue of fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### III. DISCUSSION

The district court correctly determined that the restitution lien had priority over the federal tax liens and attached to the value of De Cespedes's interest in half of the property. A lien in favor of the United States "ar[ose] on the entry of judgment" of restitution on January 7, 2009, and attached to "all property and rights to property of" De Cespedes. *See* 18 U.S.C. § 3613(c). That restitution lien was treated as "a liability for a tax assessed under the Internal Revenue Code of 1986," *id.*, and when recorded on January 15, 2009, the lien had the same effect as a federal tax lien, *id.* § 3613(d), (f). Although De Cespedes and Lazaro filed fraudulent federal tax returns in 2001, 2002, and 2003, a tax lien in favor of the United States, *see* 26 U.S.C. § 6321, did not "arise [until June 2009 when] the assessment [was] made" by the Service for the underpayment of income taxes, *id.* § 6322. Because the restitution lien was entitled to equal treatment as the federal tax liens, 18 U.S.C. § 3613(c), and was perfected earlier than the tax liens, under the general rule of "'first in time, first in right,'" *Griswold v. United States*, 59 F.3d 1571, 1575 (11th Cir. 1995) (quoting *United States v. City of New Britain*, 347 U.S. 81, 85, 74 S. Ct. 367, 370 (1954)), the restitution lien had priority over the tax liens.

Kendall Healthcare argues, as amicus curiae in support of the United States, that Lazaro waived her arguments about the priority of the restitution lien, but we

disagree. Lazaro filed a memorandum that presented to the district court her same arguments about the ownership and priority of the lien, and the district court considered the memorandum in determining how to allocate the surplus proceeds. Kendall Healthcare argues that Lazaro later waived her arguments by failing to oppose the motion of the United States to transfer the surplus proceeds for payment of the restitution lien, but Lazaro did not "intentional[ly] relinquish[] or abandon[]" her arguments that the surplus proceeds should have been allocated differently, *see United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777 (1993).

Lazaro argues that the federal tax liens were made first in time on two grounds, but we disagree. First, Lazaro argues that the Service created a tax lien by making four assessments: in November 2002 that corresponded to tax year 2001; in November 2003 and April 2005 that corresponded to tax year 2002; and in February 2005 that corresponded to tax year 2003. An assessment creates a lien only "[i]f any person liable to pay [the] tax neglects or refuses to pay the same after demand," 26 U.S.C. § 6321, and the record reflects that Lazaro and De Cespedes satisfied the four assessments. Second, Lazaro argues that a tax lien arose when she and De Cespedes signed the agreement, but that agreement was not an assessment, *see id.* §§ 6302, 6303, 6322. The agreement instead reflected that Lazaro and De Cespedes conceded liability for tax delinquencies and consented to an assessment.

Lazaro also argues that the restitution lien could not attach to De Cespedes's interest in property because it was held in a tenancy by the entirety and, alternatively, that the lien was extinguished when the Florida court transferred De Cespedes's interest in the property to her, but these arguments fail too. A spouse's "interest in [an] entireties property constitute[s] 'property' or 'rights to property' [that can be attached] for the purposes of the federal tax lien statute." *United States v. Craft*, 535 U.S. 274, 288, 122 S. Ct. 1414, 1425 (2002). "The statutory language authorizing the [restitution] lien is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *Id.* at 283, 122 S. Ct. at 1422–23 (internal quotation marks and citation omitted). De Cespedes had an equitable interest in the property to which the restitution lien attached. *See id.* at 283–88, 122 S. Ct. at 1422–26. Although "Florida law recognizes that property held by husband and wife as tenants by the entirety is not subject to execution to satisfy the debts of one spouse," "the . . . federal statutory powers [of the Service] to tax and attach liens to property trumps any state property rights afforded to a taxpayer who holds property by the entireties with [his] spouse," *United States v. Ryals*, 480 F.3d 1101, 1110 (11th Cir. 2007) (quoting *In re Sinnreich*, 391 F.3d 1295, 1297–98 (11th Cir. 2004)). And the transfer of De Cespedes's interest to Lazaro did not affect the existing restitution lien attached to the property because "it is of the very nature and essence of a lien,

7

that no matter into whose hands the property goes, it passes cum onere." *Burton v. Smith*, 38 U.S. 464, 483 (1839). *See United States v. Morrison*, 29 U.S. 124, 4 Pet. 124, 135–37 (1830); *United States v. Bess*, 357 U.S. 51, 57, 78 S. Ct. 1054, 1058 (1958). Lazaro fails to cite any authority holding that a federal lien attached to an equitable interest in real property is extinguished if the interest is transferred sometime later in a divorce proceeding.

Lazaro also argues that her attorney "holds a charging lien for fees and costs incurred in connection with procuring the judgment and order" that transferred De Cespedes's interest in the property to her, *see* 26 U.S.C. § 6323(b)(8), but we decline to consider this argument. Federal Rule of Appellate Procedure 28(a)(8) required Lazaro to include in her brief her "contentions and the reasons for them, with citations to the authorities and parts of the record" that support her argument. *See* Fed. R. App. P. 28(a)(8); *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1168 n.4 (11th Cir. 2004). Lazaro fails to identify "a lien upon or a contract" that conveys any interest in the property to her attorney, 26 U.S.C. § 6323(b)(8), or to provide any substantive argument about her attorney's entitlement to a charging lien.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of the United States.

8