Ashton v. Slater et al.

JOSEPH ASHTON

*vs.*

RICHARD SLATER, administrator of Isaiah B. Heylin, deceased, *et al.*

In case of a judgment entered prior to the taking effect of the *Gen. Stat.,* and which and the lien thereof on the debtor's land were not affected by *Gen. Stat., ch.* 66,·*s.* 254, limiting the lien of a judgment to ten years, the judgment creditor, after the expiration of the time within which an execution could be issued on said judgment, is not entitled to the assistance of a court of equity for the enforcement of the lien against the land.

Appeal from an order of the district court for Ramsey county, sustaining demurrers to the complaint. The complaint alleges that on the 5th November, 1861, two judgments were

recovered and docketed in said court in favor of plaintiff and against Isaiah B. Heylin ; that said judgments remain unpaid and in full force ; that at the time of docketing said judgments, said Heylin was the owner in fee of certain lands in Ramsey county, described in the complaint, upon which lands said judgments then became and still continue to be liens ; that said Heylin continued to be seized in fee of said lands until his death, in December, 1866 ; that the ten years within which the plaintiff was allowed by statute to enforce said judgments by execution expired November 5, 1871, and that plaintiff has now no remedy at law whereby he can enforce said judgments and the lien thereof upon said lands ; that defendant Slater is administrator of Isaiah B. Heylin ; that the defendants M. B. and E. M. Heylin claim respectively to be the widow and only child of Isaiah B. Heylin, and that the defendants Wilder and Keough claim to have purchased certain portions of said lands from said administrator on the 2d December, 1871.

The complaint also alleges matters relating to the administration and present condition of Isaiah B. Heylin's estate, and other matters in excuse of plaintiff's omission to prove his judgments as claims against the estate, and his neglect to issue execution within the ten years allowed by law ; but in the view of the case taken by this court these allegations are immaterial.

LORENZO ALLIS, for Appellant, cited *Davidson vs. Gaston*, 16 *Minn.* 230 ; *Lamprey vs. Davidson, id.* 480 ; *Brinkerhoff vs. Brown,* 4 *Johns. Ch.* 677 ; *Story's Eq. Juris.,* § 1521, *a.*

DAVIS & O'BRIEN, for the administrator, and H. J. HORN, for the Heylins, Respondents, cited *Wood vs. Calvin,* 5 *Hill.* 230 ; *Tullis vs. Brawley,* 3 *Minn.* 278 ; *Burwell vs. Tullis,* 12 *Minn.* 572 ; *Bidwell vs. Webb,* 10 *Minn.* 62 ; *Bailey vs. Mason &*

Ashton v. Slater et al.

*Craig*, 4 *Minn.* 546 ; 1 *Story's Eq. Jur.*, § 22 ; 2 *id.* §§ 1215, 1217, 1234, 1244 ; *Angell on Limitations*, ch. 3, §§ 25, 26 ; 7 *Howard*, ( *U. S.* ) 767 ; 1 *Pick.* 442.

*By the Court.*—Ripley, Ch. J.—The plaintiff never sued out execution upon his judgments. He contends, however, that, as the *Stat.* of 1862, *ch.* 27, was repealed before its limitation took effect against him, this case may be considered as falling within the principle of *Davidson vs. Gaston*, 16 *Minn* 230, and that his judgments survive, notwithstanding the provisions of *Gen. Stat., ch.* 66, § 254, and are liens on the real estate. Whether or not this is so, it is not necessary now to consider, and we express no opinion.

Assuming the correctness of the plaintiff's position, he is still not entitled to the remedy sought in this action. His theory is that, as he can have no execution or other legal process to enforce this lien, he is entitled to the aid of the equitable arm of the court for that purpose. In his view of the case this right accrued upon the expiration of the ten years, within which he might have had an execution. Since then, he says, unless he has a right to the assistance of a court of equity, he has a valuable and substantial right with no means to enforce it.

But a right which cannot be enforced is neither valuable nor substantial; therefore whether plaintiff's liens are such rights or not, depends altogether upon whether a court of equity will enforce them or not; and this we think depends upon their character. What, then, is the lien of a judgment ?

By *Pub. Stat., ch.* 61, while the lien of the judgment was unlimited as to time, it might be enforced at any time within five years after entering judgment, by execution; but if five years had elapsed without execution issued, it could be issued only by leave of court, on motion and notice to the

Ashton v. Slater et al.

adverse party ; and such leave was not to be given unless it were established by proof that the judgment was wholly or partly unsatisfied and due.   As it was thus within the power of the court in its discretion to issue execution, so long as the judgment was not paid, a reason appears for the absence of any specific limitation of the time, within which the judgment should be a lien, entirely consistent with what we understand to be the well ascertained nature of such lien.   As the district judge has remarked, a judgment lien at common law was considered as the consequence of a right to take out an *elegit.* *U. S. vs. Morrison,* 4 *Peters,* 124 ; *Burton vs. Smith,* 13 *Id.* 464.

" A general lien by judgment on land," say the supreme court of the United States, " only confers a right to levy on the same to the exclusion of other adverse interests, subsequent to the judgment   *   *   *.   In short, a judgment creditor has no *jus in re,* but a mere power to make his general lien effectual by following up the steps of the law, and consummating his judgment by an execution and levy on the land."   *Conard vs. Ins. Co.,* 1 *Pet.* 386.

Nor is our statutory lien anything more.   A judgment lien, binding the present and future real property of the debtor, is a creation of statute laws, and has no other existence.   A general lien by judgment does not constitute *per se* a property in the land itself, but only gives a right to levy on the same to the exclusion of adverse interests subsequent to the judgment. 3 *Parsons Contracts,* 275.

This court has held the following language, having at the time direct reference to our statutory judgment lien.   " It may be said that the statute of 1862, does not merely limit the time within which a remedy may be enforced, *i. e.,* is not a statute of limitation ; but we are unable to see any distinction between this case, as it now stands, and as it would stand, if the law,

instead of taking away the lien, took away the power or right to enforce it."

A judgment lien is not an estate or interest in the land. It is held that " it only confers a right to levy on the land to the exclusion of other adverse interests subsequent to the judgment. *Massingill vs. Downs*, 7 *Howard U. S.* 760 ; *Conard vs. Ins. Co.* 1 *Pet.* 442. When a remedy is denied for its enforcement, it is at least practically gone ; it would no longer be a benefit to the judgment creditor, or an injury to the judgment debtor, or a cloud upon the title of the land-owner. The difference between divesting the lien and forever denying a remedy to enforce it, is a mere verbal distinction without any practical or real difference. The legislative intention and practical operation of the law would be the same in both cases, the denial of the remedy to enforce the lien being the extinguishment of the lien itself. *Burwell vs. Tullis*, 12 *Minn.* 572.

It is said that no levy is necessary, that the lien stands in place of a levy in this state. No formal levy is necessary. ( 16 *Minn.* 13.) In its above cited quotation from the decisions of the Supreme Court of the United States, this court must be understood to have reference to our own statutes, which provide that the sheriff shall execute the writ (of execution) against the property of the judgment debtor, collecting the things in action and selling the same if the court so orders, selling the other property, and paying the plaintiff the proceeds. *Gen. Stat., ch.* 66, *s.* 284.

It may therefore be said to have in effect defined a judgment lien as conferring a right to levy on and sell the land to the exclusion of other adverse interests subsequent to the judgment, by means of an execution.

When the General Statutes went into effect the continuance of the right of the plaintiff after Nov. 5th, 1866, was contin-

gent upon his having, prior to said Nov. 5th, issued an execu-
tion, and levied it or returned it, no property found. The
General Statutes repealed the act of 1862. The revision also
removed any necessity for obtaining leave of court, after five
years, before taking out execution for the first time. Assuming,
as aforesaid, that, after Nov. 5th, 1866, as well as before and
for five years to come, the plaintiff's right was perfect at any
time to take out execution, and by virtue thereof to levy on
and sell this land to the exclusion of other adverse interests
subsequent to the judgments he might, if no such interests
intervened, have sold the land by virtue of his execution,
although the statutes had not made the judgments a lien. The
whole scope and object of the lien is to bind the land into
whosoever hands it may pass, so that the sheriff can sell it
upon the execution as the debtor's property. As to executions,
the provision of the General Statutes is that the creditor
might proceed to enforce his judgment, at any time within ten
years after entry thereof, as prescribed by statute, viz.: by
one of two kinds of execution. The one against the property
of the judgment debtor is alone material here. It requires
the sheriff, if sufficient personal property cannot be found, to
satisfy the judgment out of the real property belonging to
the debtor on the day when the judgment was docketed, or at
any time thereafter not exceeding ten years. *Ch.* 66, *ss.* 262-3-4.
What now becomes of the plaintiff's lien after the ten years?
Unless we are prepared, and we certainly are not prepared, to
overrule the case of *Burwell vs. Tullis,* and go counter to the
entire current of authority as to the nature of a statutory
judgment lien, there is no escaping the conclusion that, when
the power to enforce the judgment by execution is at an end,
the lien is practically gone.

The power of the legislature thus to deal with the sta-
tutes respecting executions is unquestioned, and the dif-

ference between saying that the plaintiff's lien should cease after November 5th, 1871, and saying that no execution should issue after that date to enforce the judgment, is a mere verbal distinction without any practical or real difference.

These considerations appear to dispose of the present case; for if the lien is practially gone, how can a court of equity enforce it ?

The equity, for which plaintiff contends, is really an equity to nullify the statute, to declare that, since and because the legislature have taken away the right to enforce these judgments by execution against the land in the hands of these purchasers from the judgment debtor, a court of equity will enforce the same judgments against the same property, and decree it to be sold in satisfaction thereof.

His equity, says the plaintiff, arises because there is no remedy at law. But his right was merely a right, given by statute, solely to enforce his judgments, in the mode prescribed by statute, against this land in these purchasers' hands. This statutory right so to enforce his judgments has expired by statutory limitation.

But for the repeal of the statute authorizing an execution at any time on leave of court, and the adoption of the ten year limitation, the ground upon which the plaintiff seeks relief in equity would have had no existence.

But the legislature had the power thus to change the law.

The plaintiff's case, then, is shortly this: Up to the first of August, 1866, *he had* a statutory right to enforce his judgments at any time, by executions against this land, in the hands of these or any other purchasers, upon leave of court first obtained for the issuance of such executions.

The legislature took away that right, as it might rightfully do, and the plaintiff seeks relief against such rightful action.

We have not been able to find any authority which sustains his position, and it seems to be clearly untenable on principle

The case of *Brinkerhoff vs. Brown*, 4 *Johns. Ch.* 671, is relied on, the plaintiff citing Chancellor Kent's remark, that " if a creditor seeks aid as to real estate, he must show a judgment creating a lien upon such estate." That is essential to the obtaining aid in those cases, in which a court of equity will give its aid, and from the context it is evident that the Chancellor had reference to cases in which the plaintiff had a right to an execution at law, but the debtor's property could not be reached at law. In enforcing liens at law, courts of equity are in general governed by the same rules of decision as courts of law with respect to the nature, extent, and operation of such liens. But in some special cases courts of equity will give aid to the enforcement and satisfaction of liens in a manner utterly unknown at law. 2 *Story, Eq.* § 1216, *a.*

Thus, if a creditor has a right to take out an *elegit*, and the rents and profits of the property bound by the judgment are insufficient to pay the judgment, or to pay it in a reasonable time, courts of equity will accelerate the payment by decreeing a sale of the property. The reason given is, that it would be gross injustice to the creditor to compel him to wait for satisfaction out of the assets of his debtor for an unreasonable length of time, when he has a clear lien on the property for the full amount.

But if the creditor had lost his right to an *elegit*, where would have been his right to apply to equity for a sale of the property ?

" The only equity the creditor had was to render his remedy more effectual by getting a sale instead of levying his debt out of rents and profits, which was the only execution the common law gave." *Lord Redesdale in* 2 *Sch. and Lefroy*, 13.

The equity depends upon the existence of a tardy and inef-

Ashton v. Slater et al.

ficacious remedy at law against the land. The plaintiff's supposed equity depends upon the fact that an effectual statute remedy has expired by operation of statute limitations valid in every respect.

If this equity exists, it is difficult to see why a court of equity should respect any other statutory limitation.

The case in which a principle is stated, more nearly analogous than any other that has fallen under our observation to that contended for here, is that of the *Supervisions of Albany Co. vs. Durant*, 9 *Paige*, 182. The defendant was assessed upon a certain amount of personal property, but declined paying the tax, and the tax collector, being unable to find any goods and chattels upon which to levy his warrant, returned it unsatisfied. Upon a bill charging that defendant had equitable assets, and choses in action, which could not be reached by warrant or execution at law, and praying for a discovery of such property and a receiver, and the application thereof to the payment of said taxes, the chancellor affirmed an order of the vicechancellor, overruling a demurrer to the bill, and said that, " where a statute gives a right without furnishing an adequate remedy to enforce such right, it is part of the established jurisdiction of this court to lend its aid, and furnish an effectual remedy, where it cannot be had by a common law proceeding."

Considering that the complainants, by these proceedings, had exhausted the remedy which the statute gave them, he held that their case was analogous to that of an ordinary judgment creditor, having issued execution and returned it unsatisfied and that they had a right to come into equity for relief.

The distinction between that case and this is obvious; but it is also to be observed that the chancellor's decision was reversed in the court of errors, 26 *Wend.*, and the sentence

quoted above was controverted by Bradish, president, in a very learned and able opinion.

A quotation made by him from Chancellor Sanford's judgment in *Donovan v. Finn., Hopk. Ch. R.* 59, has some application here :

"When a creditor comes to this court for relief, he must come not merely to obtain judgment or satisfaction of a judgment, but he must present facts which form a case of equitable jurisdiction. He must show that the debtor has made some fraudulent disposition of his property, or that the case stands infected with some trust, collusion, or injustice, against which it is the province of this court to give relief. In such cases this court has jurisdiction, not for the purpose of giving a species of execution, which the courts of law do not afford, but for the purpose of giving relief in particular cases allotted to its jurisdiction ; and when the cause, by reason of such facts, is properly here, the court proceeds upon all the circumstances of the case to give final and effectual relief." This court has taken the same view as that taken by President Bradish of the right of a judgment creditor existing in New York and other states, to come into equity for a discovery of his debtor's property, and its application to payment of the judgment, merely upon the ground that he had exhausted his remedy at law, viz.: that it was a statutory provision. *Goncelier vs. Foret,* 4 *Minn.* 13.

As to the case of *Davidson vs. Gaston,* the district judge is right in saying "that there is nothing in the case to support the claim that a judgment lien may be enforced in any other way than that prescribed by statute."

The view we take of the case renders it unnecessary to consider the effect of the death of Heylin, and the proceedings consequent thereon.

The judgment appealed from is affirmed.