## J. S. SHEDD v. ROBERT L. McCONNELL, *et al.*

1. ATTACHMENT; *Power of District Judge, at Chambers.* A judge of the district court has power, at chambers, to discharge an attachment.

2. ———— Questions with regard to a motion to discharge an *order* of attachment, discussed in the opinion.

3. EVIDENCE, WHEN INCOMPETENT; *Its Effect, on Reviewing Decision.* On the hearing of a motion to discharge an attachment, it is error for the district judge or court to admit incompetent testimony offered to sustain such motion; but where nearly all the evidence introduced on the hearing of the motion is embodied in affidavits, and the supreme court has all the evidence introduced on such hearing before it, such error will not require a reversal of the decision of the judge below, provided a preponderance of the evidence is found to support the decision of the judge discharging the attachment; but where a preponderance of the evidence introduced on the hearing of said motion is against said decision, the decision must be reversed.

4. ATTACHMENT, *Where There is a Mortgage or Other Lien for Debt Sued On.* In an action on a note or mortgage, where an affidavit is filed setting forth sufficient grounds for an order of attachment to issue, and such order of attachment is issued and property is attached thereunder, and the defendant then moves to discharge the attachment, and on the hearing of the motion it is shown that the grounds for the attachment are true, and that the mortgaged property is not a sufficient security for the debt, and no sufficient ground for discharging the attachment is shown, *held,* that the attachment should be sustained.

*Error from Lyon District Court.*

FORECLOSURE of mortgage, brought by *Shedd* against *McConnell* and wife. An order of attachment sued out by the plaintiff against the property of both defendants, was afterward, and on the 21st of December 1875, on defendants'

motion, dissolved by the district judge, at chambers.   From this order dissolving the attachment, the plaintiff appeals, and brings the case here on error.   The facts fully appear in the opinion.

*Randolph & Sedgwick*, for plaintiff, submitted, that a judge at chambers has no jurisdiction or authority to discharge an attachment.   But for the fact, that the practice of the judges in so doing, has been for some time acted upon and acquiesced in, both by the judges and the bar, without the question of such jurisdiction or authority having ever been raised, we do not think this court would hesitate to say that no such power or authority exists.   The only statutory provision we have been able to find under which such right can be claimed to exist is § 228 of the civil code, which reads as follows: "The defendant may, at any time before judgment, upon reasonable notice to the plaintiff, move to discharge an attachment, as to the whole or a part of the property attached;" and § 2 of ch. 28, Gen. Stat., which reads as follows: "The judges of the district courts, within their respective districts shall have  *  *  *  power in vacation to hear and determine *motions*  *  *  *  to discharge attachments," etc.   Now we submit that the power is not given to the judge in vacation to discharge *an attachment* by said § 228, "for when the law authorizes or contemplates the doing of a judicial act it is and must be understood to mean that the court, in term-time, may or must do it, and not the judge at chambers, unless such right is expressly conferred by law." (McCahon's Rep. 86; 1 Kas. 220.)   Then, taking this section alone, its necessary construction is, that the motion must be made in open court in term-time, and not to the judge at chambers in vacation.   And we further submit that while the legislature attempted to confer such power upon judges at chambers by § 2 of ch. 28, it did not do so, because said section is void under § 16 of article 2 of the constitution.   The title of the act in which said § 2 is found, is "*an act concerning district courts*."   We insist that a "district

court" does not mean the judge thereof in vacation, for if it did, those decisions in McCahon and 1st Kansas above referred to would never have been made.

But suppose we admit, for the sake of the argument, that the judge has power at chambers to discharge an attachment, still we insist there is a material distinction between *an order* of attachment, and *an attachment* of property made by the officer by virtue of the authority vested in him by such order. The *order* of attachment is the authority given the officer to seize property; and the *attachment* is, the seizure of or levy made on property by virtue of such order. And we submit that if ample authority or jurisdiction is given to the judge at chambers to discharge the attachment, that is, to release the property seized, or levied on by virtue of the order of attachment, still there is no jurisdiction or authority given him whatever, to set aside the order itself before anything has been attached, and if he has authority to set aside the order at all, he can do it as well before any levy is made as he can afterward. And we further submit that if he has not jurisdiction to set aside the order itself, he cannot on a motion made to him to do so, disregard said motion, and discharge the property attached, any more than on an application made to the judge at chambers to quash a criminal complaint or information he could discharge the prisoner from his arrest or recognizance, which he could do on a *habeas corpus* brought for that purpose. We do not wish to be understood as meaning that the court in term may not set aside an order of attachment, for it has full control of all its process; but we mean that the *judge in vacation* cannot do so without express authority, any more than he can set aside a summons, or a judicial sale of real property, or many other things too numerous to mention, which it would be absurd to think of his doing. The court will perceive that the motion in this case did not ask the judge to discharge any property; nor did it show or claim that any property had been attached; nor could the judge from any showing made to him know that any property had been attached until evidence was intro-

duced on the hearing of the motion, over our objection. We were only notified that they wanted to set aside *the order*, and the judge did not set aside the order, but simply discharged the property, thus leaving the order in full force, with nothing to prevent the sheriff from attaching other property, by virtue of it, if it was not returned.

Again: After the plaintiff had given evidence tending to prove that the mortgage security was insufficient in value to satisfy plaintiff's claim, the defendant offered, and the court admitted irrelevant and incompetent, and hearsay testimony. The reception of said testimony by the judge was error; and the fact that he did receive it over our objection shows that he must have considered it to our prejudice.

*Gillett & Forde,* for defendants, contended that the judge had jurisdiction to hear the motion; 7 Kas. 422. His jurisdiction is conferred by § 2, ch. 28, Gen. Stat. It is claimed that that portion of § 2 conferring power on a district judge in vacation to *discharge attachments* is void. The title of this act is very broad, and it seems sufficiently broad to fairly include the grant of powers to judges in vacation. The powers of a judge at chambers or in vacation are so nearly related to the court itself, that conferring power on the judges at chambers, or in vacation, is not foreign to but is fairly included in the title "an act concerning district courts." For a general discussion of the subject see—13 Kas. 600; 6 Kas. 335; Cooley Const. Lim. 144; Potter's Dwarris Stat. 100 to 104; 13 Mich. 449; 35 N. Y. 193; 38 N. Y. 494; Am. Law Reg. Dec. 1875, p. 852; Cent. Law Jour. Feb. 18, 1876, p. 117.

A distinction has been attempted by counsel between a motion to discharge and set aside *an order* of attachment, and to discharge *an attachment.* The distinction as applied to this case is altogether too highly refined to be of any practical application. It is claimed that, "admitting for the sake of argument, that the judge in vacation has power to *discharge an attachment,* still his power is confined and limited to what

is expressly granted, and power being granted to *discharge an attachment* does not authorize the judge to set aside the *order* of attachment." We fail to see the force of the counsel's argument. A motion to discharge an attachment is one thing—and it may be granted for various reasons—as for instance: 1st, where the order of attachment is rightfully issued, but there has been an excessive levy; 2d, where the order is rightfully issued, but has been levied on exempt property; 3d, where the order of attachment has been wrongfully and unlawfully issued. Now, a motion to set aside (or more properly *to dissolve*) the *order of attachment* is in effect a motion to discharge *all the attached property*, and the power granted to a judge in vacation to *discharge attachments*, means that he is to discharge all or a part of the attached property, according to circumstances.

The testimony objected to as incompetent, and hearsay, was relevant and proper. Testimony had already been given showing that the statements of Prescott & Prescott, which were testified to by Evans, were either statements of the then owners of the note and mortgage, or were statements made by them as agents within the scope of their agency, and in reference to the subject-matter of that agency, which amount to an admission of the principal, and is admissible on either of those grounds. It is proper also as impeaching evidence. The testimony of Prescotts was taken *ex parte*, by affidavits, and it was not possible to lay any foundation for impeaching testimony. It is either competent to show in this mode that a witness had made contradictory statements at other times, or, a party, in cases tried on affidavits, is deprived of this means of impeaching a witness. But even if it were error to admit the testimony of Evans, which we deny, still it is an immaterial error, and could not prejudice the plaintiff, because it is well proved that said Prescott & Prescott made the loan and took the mortgage therefor, and this is one of the strongest evidences that they then deemed the security ample.

The amount sued for, and which plaintiff is entitled to re-

cover, was secured by mortgages on real property. Where attachment proceedings are instituted upon a secured debt, the presumption is that the attachment is wrongful, and the burden is on the attaching creditor to show that his security is insufficient; (*Gillespie v. Lovell*, 6 Kas. 425.) In this case, if the motion had been made to discharge on the papers, it would have been sustained, as the affidavit for attachment did not show that the security was insufficient. The burden is on the attaching creditor to show that his mortgage security is insufficient. The average valuation of the mortgaged premises, by 32 witnesses of defendant, is $1,837.50. The average valuation by 32 witnesses of plaintiff is $618.75. The average between plaintiffs' and defendant's witnesses is $1,228.12, which is pretty fair security for $1,000. The value of the property attached as fixed by the appraisers is $1,224.40. The motion to discharge was made on several grounds, and as the order discharging the attachment sustains such motion generally, it must appear that none of the grounds of the motion were sustained by the evidence, before this court would reverse. The same rule applies as in reviewing alleged errors in orders granting a new trial; 3 Kas. 39; 7 Kas. 209.

The opinion of the court was delivered by

VALENTINE, J.: The object of this petition in error is to reverse an order of the judge of the district court, made at chambers, discharging an attachment. It appears from the record that on the 1st of December 1875, J. S. Shedd commenced this action in the district court against Robert L. McConnell and Mary A. McConnell on a certain promissory note and mortgage, and at the same time procured an order of attachment to be issued by the clerk of said court, which order of attachment was on the 2d of December levied on certain goods and chattels belonging to the defendants. Afterward the defendants made a motion before said judge at chambers "to discharge and set aside the order of attachment issued in this cause on the 1st of December

*Statement of the case.*

1875, for and on account of defects appearing upon the face of the papers, and on the further ground that it appears from the affidavit upon which said attachment was issued that the cause of action is in the nature of an equitable action, and that it is for the foreclosure of a mortgage upon real property, and the said debt is fully secured by the said mortgaged property, and that each and every of the grounds for an attachment stated in said affidavit, upon which the said attachment issued, are false." On the hearing of this motion a small amount of oral testimony was introduced, and a vast number of affidavits were read. At the conclusion of the hearing the judge ordered, "that the said attachment be and the same is hereby discharged as to all the property so levied on." The plaintiff excepted to this ruling, and assigns error thereon.

It will be noticed that the defendants moved to discharge the order of attachment on three grounds: 1st, for defects appearing on the face of the papers; 2d, the debt was fully secured by the mortgage; 3d, the grounds stated in the plaintiff's affidavit for the attachment were all false. The second ground was really the only one relied on by the defendants on the hearing below, as would seem from the evidence introduced. And it was evidently upon that ground alone that the judge discharged the attachment. At the close of the hearing there were certainly no defects appearing on the face of the plaintiff's papers which would authorize the discharge of the attachment. Even if it devolved upon the plaintiff to show, in his original affidavit, that the mortgage was not a sufficient security for his debt, still he showed that fact so abundantly by his subsequent affidavits that the defect (if it was a defect) must be deemed to have been cured; and no other defect appearing on the face of the papers has been suggested. The defendants filed an affidavit made by themselves, possibly for the purpose of putting in issue the grounds stated in the plaintiff's original affidavit; but it certainly does not put in issue all of such grounds. For instance, the plaintiff's original affidavit stated

Denial of facts alleged; certainty required.

among other things that on the 1st of December 1875, (the time when said order of attachment was issued, and one day before the defendants' property was seized,) "the said defendants have property and rights in action which they conceal." The defendants' affidavit states that on December 11th 1875, "they [the defendants] have no property and rights in action which they conceal;" and the affidavit does not state that on December 1st the defendants did not have any property or rights in action which they were then concealing.  Both affidavits were probably true in this respect.  They do not contradict each other.  At least, we should think from the evidence that the plaintiff's affidavit was true.  And if it was true when made, and when the order of attachment was issued, the defendants cannot have the attachment discharged merely because some ten or eleven days thereafter, and after their property had been attached, they had ceased to "have property and rights in action which they conceal."  On the hearing of the motion the plaintiff introduced evidence to prove that the grounds of his affidavit were true, and the defendants did not introduce any evidence to the contrary.  Hence the judge could not have found that all the grounds stated in the plaintiff's affidavit were false.  As before stated, we think the judge must have discharged the attachment solely upon the ground that the plaintiff's debt was amply secured by the mortgage.  It would seem from the evidence introduced, that this was the only question which the defendants desired to submit to the judge.  Whether the judge decided correctly or not upon this question, we shall consider hereafter.

Hearing of motion.

The plaintiff claims that the judge had no right to consider any of the questions raised by the motion to discharge the attachment.  He claims that a judge of the district has no power or authority in any case to discharge an attachment at chambers; and (after defining that the word "attachment" means, the seizure and holding of property by virtue of an *order* of attachment,) he then claims that, even if it should be admitted that a judge of the district court could discharge *an attachment* at chambers, still that he

Powers of district judge at chambers.

39 —18 KAS.

has no power or authority to discharge an *order* of attachment at chambers. And he further claims, that as the motion in this case was to discharge the *order* of attachment, and not to discharge the attachment itself, therefore the judge has no right to hear the *motion*, or to discharge the attachment upon such motion. With reference to the first claim of the plaintiff, we would say that we think that a judge of the district court has power at chambers to discharge an attachment; and without making any argument in answer to the plaintiff's argument, we would simply refer to the statutes and authorities from which such argument may be made. (Laws of 1861, p. 121, § 3; Comp. Laws of 1862, p. 454, § 3; Gen. Stat. of 1868, p. 304, § 2; *Bowman v. Cockrill*, 6 Kas. 334, 335; *Division of Howard Co.*, 15 Kas. 195, 214, 215; *Kiser v. Sawyer*, 4 Kas. 503, 511, which holds that, "the court, the greater, includes the judge, the less." This is true of the business of the court; it includes the business done before the judge.

With reference to the second claim of the plaintiff, we would say, that, as the judge did nothing more than to discharge the attachment, (taking the plaintiff's own definition of the word "attachment,") the question is simply, whether the motion was sufficient. The motion was to discharge the *order* of attachment. Now would not a discharge of the order of attachment be also a discharge of the property held under the order of attachment? Whether the motion was technically correct or not, as a motion to discharge the attachment, we do not choose to decide. But we think that no material error was committed by the court in considering it sufficient. The proceedings show that the plaintiff had full notice that the defendants desired upon said motion that their property should be discharged from the attachment, and also had full notice upon what grounds the defendants so desired such discharge; and the property was discharged on one of these grounds.

On the hearing of the motion to discharge the attachment, the defendants offered to introduce the following testimony of the witness John E. Evans, to-wit: "I know the persons

comprising the firm of Prescott & Prescott, and had a con-

Incompetent
testimony;
effect of.

versation with them in Topeka, in May 1875, in their office, in which they said they had made defendant, R. L. McConnell, a loan of $1,000 on his place in Lyon county, and that they thought the place was a good place, and that McConnell was a fine man, and that the loan was well secured." Neither the firm of Prescott & Prescott, nor any member thereof, was a party to this suit; nor was it shown that either of them was ever authorized by the plain-tiff, or by any person under whom the plaintiff claimed, to make any such statement; nor was it shown that the con-versation was connected with the transaction of any business for the plaintiff, or for any person under whom the plaintiff claimed; nor was it shown that the attention of either mem-ber of said firm of Prescott & Prescott was ever called to said conversation, so as to give either of them an oppor-tunity to explain the same. The judge permitted said testi-mony to be introduced over proper objections and exceptions made by the plaintiff. In this we think the judge erred. But as nearly all the evidence introduced on the hearing of the motion is embodied in affidavits, and as we have all the evidence introduced on such hearing before us, this error will not require a reversal of the decision below, provided a pre-ponderance of the other evidence is found to support such a decision.

This then brings us to the last question in the case: Does the preponderance of the evidence sustain the decision be-

Preponderance
of testimony;
burden of
proof.

low? Or, for the purposes of this case, we shall state the question thus: Is such decision sus-tained by at least an equilibrium of the evi-dence? For it may be, that the burden of proof rested upon the plaintiff on the hearing of said motion, and that unless the plaintiff furnished a preponderance of the evidence the decision of the judge below must be sustained. The ques-tion whether the decision of the judge below is sustained by sufficient evidence, depends entirely upon this other question, whether said mortgage was shown to be a sufficient security for the plaintiff's debt, or not. The mortgaged property

consisted of the N.E.¼ of sec. 1, township 17, range 12, in Lyon county, except two acres thereof which had been previously conveyed to other parties by the defendants. Said property is broken, hilly, upland prairie, cut up with ravines, and has no improvements thereon except an old, dilapidated, wooden dwelling-house, with out-buildings to correspond, and a well, and about six acres fenced and broke. It is worth about $1,228. But no witness testified that it would sell at forced sale for that price. One witness testified that it would not sell at forced sale for $800; and no witness testified that it would sell at forced sale for more than that sum. The sheriff of the county, who perhaps testified as intelligently upon that subject as any other witness in the case, testified that said mortgaged property would not sell for cash at sheriff's sale for $480. Two other witnesses testified to substantially the same thing. The defendant himself did not believe that the land was worth the amount of the mortgage-debt. He was anxious that the plaintiff should take the land for the debt, and said a short time before this suit was commenced, "that if the mortgage was foreclosed, and said real estate sold at sheriff's sale, it would not bring enough to satisfy and pay off said claim and the costs of the proceedings." Soon after he mortgaged the said property he was in the county treasurer's office, and told the treasurer that he would not pay the taxes on said land for the reason that he had sold the same. A person standing by said to the defendant, that he thought that he (the defendant) had recently mortgaged the premises. And the defendant answered saying, "that said premises were devilish well sold, and that they [the mortgagees] could take them;" "that he had got one thousand dollars on the said premises, and that they were devilish well sold, and that they [the mortgagees] might keep them." And the defendant did not pay the taxes on said premises, although he had agreed in the mortgage that he would do so. And the defendant also failed to make certain improvements on the land which he agreed in the mortgage to make. One of the defendant's own witnesses testifies that it is not customary for loan agents

to "loan more money on land than one-third of the actual value thereof, in Lyon county." This tends to show that the value put upon land in Lyon county is vastly above its selling-price, and vastly above what it would be a good security for. The statutes provide that real estate sold on execution (except where appraisement is waived) must sell for at least two-thirds of its appraised value. Generally it will not sell to third persons for that amount, and the judgment-creditor has to purchase it himself at that price in order to bring about a sale at all. Now while the evidence in this case does not show that the mortgaged property would sell at sheriff's sale for two-thirds of what its value would appear to be, but on the contrary shows that it would not sell for that much, yet under the statutes we think we should presume that it would sell for that much. Now as the property is worth about $1,228, it should sell at sheriff's sale for $818.67. And this is all for which it can reasonably be considered as a good security. On the other hand, the mortgage is for $1,000. There is now over $175 of interest actually due on the note and mortgage; (the coupons show $180;) the defendants agreed in the mortgage to pay a reasonable attorney-fee for foreclosure, and the evidence shows that a reasonable attorney-fee would be $150. The evidence also shows that the defendants failed to pay the taxes for the years 1874 and 1875, and we suppose have failed to pay all taxes on the premises up to this time. The evidence also shows that the plaintiff has paid $50 of taxes on the premises. The costs will probably be $50 or $60, and may be vastly more. All these items must be considered in rendering the judgment, and they will all be liens upon the mortgaged property. Whether any of the items can be reduced below the figures we have given, when the judgment shall be rendered, is not certain. It is possible that the attorney-fee may, though that is not certain. It is certain however that the interest will be more than we have stated, and it is probable that the taxes and costs will also be more. Now these items in the aggregate amount to $1,425. And it will therefore be seen that the mortgaged property is not a sufficient secur-

ity for the judgment which will probably be rendered. But we will suppose that the judge below anticipated that the judgment would be rendered at as early a day as possible, and with as little trouble and expense as possible, notwithstanding the extraordinary contest that was had over this motion, and notwithstanding that the evidence of about seventy witnesses was used on the hearing of this motion. In such a case the amount of the judgment would of course be reduced below the amount at which we have placed it. But still we do not think that the amount could be reduced so low as to make the mortgaged property a sufficient security for the judgment. In fact, we do not think that the mortgaged property would be a sufficient security for the mere naked principal of the debt alone, without interest, without taxes, without costs, and without attorney-fees. We do not believe from the evidence that the mortgaged property could be sold at sheriff sale for $800. Indeed, there is only one witness who shows by his evidence that he resides near the property who says it is worth more than that sum, and he says it is worth only $900. The most of the witnesses who show by their testimony that they reside near the property, say that it is not worth $800, and one witness who has resided within two miles of the property for more than eighteen years, says that it is not worth more than $400.

It would seem from the foregoing facts, that but one conclusion can be reached. In *Gillespie v. Lovell*, 7 Kas. 419, 423, which was an action to foreclose a mechanic's lien, and in which an order of attachment was issued and levied, we held that "under § 190 of the civil code the plaintiff may have an attachment in every 'civil action for the recovery of money,'" and that an action to foreclose a mechanic's lien was a civil action. In such action, and also in an action to foreclose a real-estate mortgage, where the plaintiff recovers, a personal judgment is rendered against the debtor, where such debtor is made a party defendant, as in this case. In the case cited, the defendant did not attempt to show that the property bound by the mechanic's lien was a sufficient security for the plaintiff's claim, but he did object to the plain-

tiff's showing that such lien was not a sufficient security. We held that "if it had been shown that the lien itself was a sufficient security for the plaintiff's claim, it would have been the duty of the court below, or judge, to dissolve the attachment." The logical deduction from this decision is, that in an action for money in which a personal judgment may be rendered against the defendant, the plaintiff may, if sufficient cause exists, have an attachment against the property of the defendant, notwithstanding the fact that in the same action the plaintiff seeks to foreclose a lien on specific property held as security for the debt due, provided such lien is insufficient security for the plaintiff's claim; and that where in such an action an order of attachment is duly sued out and levied, and it is shown that the mortgaged property is not sufficient security for the plaintiff's claim, it is error for the district judge or district court to set aside or dissolve the attachment proceedings merely because of the existence of such specific lien. And therefore, in the present case, the order of the district judge discharging the attachment will be reversed. All the Justices concurring.