SLEMMONS LISLE v. S. L. CHENEY, *et al.*

1. MORTGAGE—*Foreclosure*—*Personal Judgment*—*Extent of Lien.* A personal judgment rendered in an action to foreclose a mortgage is a lien on all the real estate of the debtor within the county in which such judgment is rendered, and attaches to land acquired by the debtor after the rendition of the judgment.

2. EXECUTION, *Stay of; Lien, Not Suspended.* A stay of execution on a judgment rendered in such an action does not operate to suspend the lien of the judgment, so that a third person can purchase land from the debtor during the stay, free from the lien.

*Error from Cherokee District Court.*

ACTION by *Lisle* against *Cheney* and others, to restrain defendants from proceeding under the execution issued out of the district court of Cherokee county, in the action wherein Tristam Dunham was plaintiff and Noah W. Weaver and Alice M. Weaver were defendants. The execution was issued upon the order of the defendant, S. L. Cheney, assignee of the Dunham judgment, and placed in the hands of the other defendant, W. H. Layne, sheriff of said county, for service and enforcement. All the facts are agreed to and set out in the statement of facts, as follows:

"1. A personal judgment was rendered in the district court of Cherokee county, in favor of Tristam Dunham and against Noah W. Weaver and Alice M. Weaver, on the 18th day of May, 1875, and at the same time a decree was rendered, foreclosing a certain mortgage executed by the Weavers.

"2. Alice M. Weaver, one of the judgment debtors, became the owner of the land in question on the 5th day of June, 1875, and sold the same on the 29th day of January, 1876.

"3. The land in question was at no time the homestead of the said Alice M. Weaver, and at the time she sold said land Dunham's judgment was in full force and effect and wholly unsatisfied.

"4. S. L. Cheney, one of the defendants in error, was the owner and assignee of this judgment at the time the execution was issued and levied upon the land in question by W. H. Layne, sheriff of Cherokee county, also a defendant in

error. The property described in the decree of foreclosure had been sold prior to the date of this execution, and the proceeds of the sale of said property were applied to the payment of this judgment, and at the time the said execution was issued there was still a balance due on said judgment."

In the decree of foreclosure, Dunham consented to a stay of the judgment and the issuing of the order of sale. The decree is as follows, to wit:

"That execution and order of sale herein be stayed until the first day of November, 1875; and that if on or before said day the defendants shall pay or cause to be paid to the said plaintiff or his attorney all interest which shall then be due upon the said judgment, and so much of said judgment as is for interest found due upon said note, then execution shall be stayed for one year from said first day of November, 1875; and if within one year from said last-mentioned day the said defendants shall pay or cause to be paid to said plaintiff the interest which shall have accrued prior to the said first day of November, 1876, then the order of sale shall be stayed upon said judgment until the first day of November, 1877; and if on or before the day last mentioned the said defendants shall pay or cause to be paid to said plaintiff or his attorney the interest which shall have accrued upon said judgment prior thereto, then order of sale shall be stayed upon said judgment until the first day of November, 1878."

The record (see margin of decree) shows that on November 1, 1875, the defendants paid the sum of $301. This is the interest shown in the judgment, $208, and the interest on $1,708, at 12 per cent., from May 18, 1875, to November 1, 1875, $93; total, $301. The interest was again paid, on November 14, 1877. The court found for the defendants, and rendered judgment accordingly, at the April Term, 1884, Plaintiff *Lisle* brings the case here.

*W. R. Cowley*, for plaintiff in error.
*Coulter & Shearman*, for defendants in error.

Opinion by SIMPSON, C.: The first question presented in this case by the brief of the plaintiff in error is one of very great practical importance, both to the people and the legal

profession of this state. The counsel for plaintiff in error urges his views with great vigor and ability, and presents his side of the case in its strongest light. It is worthy of passing comment, that this question has never before been presented to the court. In the multiplicity of foreclosure actions in every judicial district, and in the great variety of contention arising out of them, the question must have occurred · many times; and the fact that it has not found its way to this tribunal until so late a day, must be accepted as a belief that the general judgment of the profession must have accorded with that of the learned district judge who rendered the judgment in this case.

The question presented is this: Is the personal judgment rendered against the mortgagor in an action to foreclose a mortgage, a lien on the other real estate of the debtor within the county ? Counsel for plaintiff in error, with all his research, has not called our attention to a single adjudicated case in which the question has been determined; and we have been unable to find but few in which it was considered, and in those the decision was based upon some statutory provision peculiar to the state in which they were rendered, and afford no light and lend no assistance to its determination here. We must decide this question for ourselves, and must seek and find, in the various provisions of our code, on the subjects of judgment and execution, the nature and extent of the lien of a judgment in an action to foreclose a mortgage. There are but three sections of the code that have any application to this question, and they are §§ 399, 419, and 517. If they have reference to one and the same subject, they are to be taken as *in pari materia ;* and to be considered and construed together, and such construction is to be given them as will make them harmonious, and give expression to each and all of them. There certainly can be no variety of opinion as to the kind or character of judgment that is to be rendered in such an action. There is but one judgment provided for in § 399, and that is a personal judgment. It is the same kind of a judgment that is rendered in every other action for the recovery of money only. It possesses all the

features and is endowed with all the characteristics of judgments in all ordinary actions. The statute itself makes no distinctions, enumerates no differences, mentions no departures from what we all understand to be a judgment on a money demand. There is in addition to this ordinary judgment one for the sale of the property charged, and an application of the proceeds to the satisfaction of the judgment.

Under § 419 it is provided that judgments of courts of record of this state shall be liens on the real estate of the debtor within the county in which the judgment is rendered, from the first day of the term at which the judgment is rendered. The language of this section is very broad and comprehensive, and seems to include all judgments that are rendered by courts of record in the state, and declares without exception, and in terms so positive that there is no room left for construction, that they shall be liens on the real estate of the debtor within the county.

The mortgage lien is created solely by the acts of the parties; a judgment lien is the creature of positive law. It exists only by virtue of the authority of the statute, the same power that authorizes the rendition of the judgment. Judgments are not of themselves liens upon property; they are made so by the legislative enactments. When the mortgagor makes default in payment, at the time and in the manner specified by the mortgage, and the owner recovers a judgment, the nature of the lien is changed by operation of law, from a special one that results from the contract of the parties, to a general one that is created by the law-making power of the state. The legislature, from an organic necessity, legislates for a class of cases, rather than for particular or special ones, and it gives to all judgments of like kind and character the same lien; so that we are unable to see from a consideration of these two sections combined, that legislation has made any exception in case of mortgage liens; they are placed on the same footing as liens in other actions for the recovery of judgments for money.

Counsel for plaintiff in error calls our attention specially to § 517 of the code, and hopes that we will carefully note the wording of that section. We have done so, and as a result,

we are very confident that it will not bear the construction he seeks to give it. That section is a part of the article of the code that treats of executions. The object of the whole article is to prescribe the manner of the issue, service and return of these writs, and to regulate all the incidental proceedings thereto, and gives a definition of the various kinds of executions allowed by it. It declares, in § 517, that—

" In all special cases the execution shall conform to the judgment or order of the court. When a judgment for any specified amount, and also for the sale of specific real or personal property, shall have been rendered, and an amount sufficient to satisfy the amount of the debt or damages and costs, *be not made* from the sale of the property specified, an execution may issue for the balance, as in other cases."

The judgment in a foreclosure action generally declares that the amount secured is a lien on the real estate specified in the mortgage; and more often than otherwise, declares that amount a first lien on such property. Of course we all understand that this part of the judgment will be enforced subject to the rights of all other persons not parties to the action in which it was rendered, and without prejudice to the priority of lien of any prior incumbrancer; so that a mortgage lien, in an action to foreclose it, and in the enforcement of it after it has passed into judgment, is subject to all the other provisions of the statute, and the principles of the law, on all questions respecting it. There is absolutely nothing in this section that can be construed in conflict with the scope and bearing of § 419. ·It might be held, if it were necessary to do so, that this section has the effect to preserve in the judgment lien the contract of the parties that specific real property should be devoted to the payment of the debt; but its true intent and meaning are to prescribe the manner in which a judgment lien in a class of cases in which there is a charge on real property, shall be enforced; that the contract and understanding of the parties should be carried out, by first selling the specific property pledged to the payment of the debt; and if it turns out that this is not sufficient for that purpose, then that an execution should issue for the residue in the same manner and with

like effect as if there had been no specific property charged
with its payment.

In taking these three sections together, we conclude that
§ 399 is declaratory of the kind of a judgment that is to be
rendered in all foreclosure actions.   Section 419 declares the
effect of such a judgment as a lien upon the real estate of a
debtor; section 517 prescribes the manner in which such a
judgment is to be enforced.   Under a judgment for any other
money demand, the judgment creditor has a lien on the real
estate of the debtor within the county; under a judgment on
a money demand secured by mortgage, a judgment creditor
has a lien on the real estate of the debtor within the county;
with this condition attached, that the proceeds of the sale of
certain specific real property shall be first applied to the satis-
faction of such judgment.   This we adopt, and declare to be
the true construction of the various sections of the code of
civil procedure on judgments rendered in actions to foreclose
mortgages.

There are some decisions of this court that we think have
an important influence in determining the construction of
these sections of the code.   *Gillespie v. Lovell*, 7 Kas. 419, was
an action for the recovery of money due on an account, and
to foreclose a mechanics' lien for the amount so claimed to be
due; an attachment was also issued in the case.   The princi-
pal question in the case was, as to whether an order of attach-
ment could be issued in an action on an account, and to foreclose
a mechanics' lien.   The court say, (VALENTINE, J.:)

"Under § 190 of the civil code, the plaintiff may have an
attachment in every 'civil action for the recovery of money.'
The enforcement of a mechanics' lien is, under said code, a
civil action for the recovery of money.   The debt upon which
the action is brought is the real subject of the action, and the
mechanics' lien is simply subservient and auxiliary thereto;
and the judgment rendered in such an action is not merely one
of foreclosure, but it is a *personal judgment* against the debtor
for the amount of the debt, with interest, and the property
upon which the lien exists is ordered to be sold to satisfy said
judgment.   If this was purely a suit in equity to foreclose a
mechanics' lien, a suit in which no personal judgment could

be rendered, probably an attachment would not lie; but as it is not such a suit, as it is an action in which a personal judgment is allowed by law, a judgment that will not only reach the property upon which the mechanics' lien exists, but will also reach all the property of the judgment debtor not exempt by law from execution, a judgment upon which an ordinary execution may be issued, there seems to be no good reason why an attachment may not be issued in this case as in other cases. The language of the statute is certainly broad enough. Will it be supposed that such a judgment as the one rendered in mechanics'-lien cases would not, when rendered, be a lien the same as other personal judgments upon all the real estate of the judgment debtor subject to execution, that which is free from the mechanics' lien, as well as that which is subject to it? Will it be supposed that the plaintiff would not have the same right to an attachment and garnishment upon such a judgment, after the property subject to the mechanics' lien had been exhausted, as he would have upon any other judgment?"

This is a very suggestive case, and its reasoning applies as well to actions to foreclose a mortgage, as to enforce a mechanics' lien. It establishes the proposition that, under our system of pleading and practice, actions to enforce charges or liens on specific property that were formerly equitable in their nature, are now converted into legal actions. It has also been decided by the court, that in an action to foreclose a mortgage where the plaintiff claims a personal judgment for money, the defendant is entitled to a jury trial. This court has held that in an action to foreclose a mechanics' lien, if the plaintiff fail in establishing the lien, he is nevertheless entitled to a personal judgment for the amount due him. (*Haight v. Schuck*, 6 Kas. 192.)

In the case of *Shedd v. McConnell*, 18 Kas. 594, it being an action to foreclose a mortgage, an order of attachment was issued against the property of the defendant, on the theory that the mortgaged property was not sufficient to pay the plaintiff's claim. In deciding the questions raised, Justice VALENTINE said, in commenting on the case of *Gillespie v. Lovell*:

"The logical deduction from the decision is, that in an action for money, in which a personal judgment may be rendered

against the defendant, the plaintiff may, if sufficient cause exists, have an attachment against the property of the defendant, notwithstanding the fact that in the same action the plaintiff seeks to foreclose a lien on specific property held as security for the debt due, provided such lien is insufficient security for the plaintiff's claim."

From these cases it must be held that in this state all civil actions to enforce liens on specific property are to be regarded in classification as legal actions for the recovery of money; that the parties thereto are entitled to a jury trial; that they are entitled to all the provisional remedies applicable; that personal judgments are rendered in such actions, and that such personal judgments are liens on all the real estate of the debtor within the county in which they are rendered. We therefore conclude that at the time of the purchase of the land described in his petition by the plaintiff in error, it was subject to the lien of the judgment rendered in the foreclosure action of Tristam Dunham v. Noah W. Weaver and Alice M. Weaver.

1. Mortgage— foreclosure— personal judgment—extent of lien.

As a second reason for reversal, the plaintiff in error claims that "if a judgment be rendered with a stay of execution, no lien is created upon the real estate of the debtor until the plaintiff has a right to issue his execution." In support of this statement of the law he cites Overton on the Law of Liens, page 337; *Scriba v. Deanes*, 1 Brock. (U. S. C. C.) 167, a decision of Chief Justice Marshall; *Bank of the United States v. Winston's Ex'rs*, 2 id. 253; *Ashton v. Slater*, 19 Minn. 347; *United States v. Morrison*, 4 Pet. 124; *Burton v. Smith*, 13 id. 464. The two cases cited from Brockenbrough are decisions of Chief Justice Marshall. The contention was as to priority of lien by judgments, mortgages, and deeds of trust. The judgments were rendered and the mortgages and deeds of trust executed in the state of Virginia. The chief justice says:

"The judgment in favor of John Allan, having been first rendered, would constitute the first lien had there been no stay of execution. The rank of that judgment depends on the question, whether the lien takes place at its rendition, or at

the time when execution may issue on it. It must be admitted, that a judgment at common law did not bind lands, *and that there has been no statute which in direct terms creates the lien.* But the courts have so construed the statute which gives the elegit *as to infer a lien from the power to take the lands in execution.* The lien then grows out of the right to issue the elegit, and is, consequently, inseparably connected with that right. It would seem to follow irresistibly from these premises, that Allan's judgment constituted no lien on the lands until it was in his power to issue execution thereon." (*Scriba v. Deanes,* 1 Brock. 166.)

The other case, *Bank of the United States v. Winston's Executors,* 2 Brock. 252, is but an affirmance of what is said in the first case.

It must be admitted that these cases have no application to the case at bar; in this state we have a statute declaring that —

"Judgments of courts of record, of this state, and of courts of the United States rendered within this state, shall be liens on the real estate of the debtor, within the county in which the judgment is rendered, from the first day of the term at which the judgment is rendered; but judgments by confession, and judgments rendered at the same term during which the action was commenced, shall bind such lands only from the day on which such judgment was rendered." (Code, § 419.)

This section of the code means what it says in plain terms, that judgments are liens from the time specified. The statute itself fixing the time at which the lien attaches, it is not dependent on the issue of an execution, or any other act of the judgment creditor.

The citation from Overton, page 337, is to this extent: "But if the judgment be rendered with a stay of execution, no lien is created until the plaintiff has a right to issue his execution." To support the text, he refers to the two cases from Brockenbrough's Circuit Court Reports. The case of *United States v. Morrison,* 4 Pet. 124, decided by Chief Justice Marshall, is but an affirmance of the two cases reported by Brockenbrough. The case of *Burton v. Smith,* 13 Pet. 364, is a case from the eastern district of Virginia, and again affirms

the first case in Brockenbrough. In the case of *Ashton v. Slater*, 19 Minn. 347, the plaintiff had a judgment in 1861 against Heylin, who owned certain lands that were bound by the lien of the judgment; Heylin died in 1866, and Slater was his administrator. The ten years allowed by the statutes of Minnesota within which a creditor must enforce his lien had expired. He had also failed to prove his judgment as a claim against the estate, and appealed to the court to aid him in the enforcement of his lien. And whatever the court says is based upon this state of facts, and has no possible application to this question we are considering. It will be seen that these cases furnish us no aid in the construction of our statutes on the subject of judgment liens, and it must be admitted that with the possible exception of § 468 of the code, there are no statutory provisions supporting the views of the plaintiff in error.

We have seen that the real estate of the debtor within the county is bound by the lien of a judgment from the first day of the term at which it was rendered. The lien thus created and declared by statute exists until the judgment becomes dormant, or is barred by the statutes of limitation. It is true that under § 468, it may become subordinate to the lien of some other judgment creditor, by failure to have execution issued and levied within a year after its rendition. What effect a stay of execution by consent of the judgment creditor for more than one year may have on the liens of other judgment creditors is not now necessary to inquire, as the plaintiff in error is not a judgment creditor, and does not fall within the operation of that section. He is not named in the statute, and takes nothing by it.

By operation of law, a stay of execution is allowed in certain actions in which there is a waiver of appraisement. (Code, § 453.) Even this does not operate on the judgment or lien; it does not have the effect to impair the lien. If it is a first one, its seniority must be preserved by levy within the year. (See *Smith v. Kimball*, ante, p. 474.)

It is a very common practice in this state to grant to the

judgment debtors a stay of execution, and it has been done, without a claim ever having been asserted before, that the lien of the judgment was suspended during the time of the stay; and while this fact is not conclusive, we cite it only for the purpose of showing that the construction we give the statute is the one that has been adopted and acted on by the bar for years. We conclude, therefore, that the stay of execution did not suspend the lien of the judgment in the foreclosure action of Dunham *v.* Weaver, so as to protect the plaintiff in error in his purchase of the land from Mrs. Weaver.

2. Execution, stay of; lien, not suspended.

We therefore recommend that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.